# Lake Erie & Western Railroad Company et al. *v.* Charman, Administrator.

### [No. 20,039.  Filed June 18, 1903.]

DEATH BY WRONGFUL ACT.—*General Administrator Proper Plaintiff.*— The general administrator of the estate of a decedent is the personal representative of such deceased person within the meaning of §285 Burns 1901, and the only proper plaintiff in an action given by said section for a death by wrongful act. *pp. 97, 98.*

MASTER AND SERVANT.—*Vice-Principal.—Joint Tort-Feasor.*—An employe acting as vice-principal within the meaning of §7083 Burns 1901, is personally liable as a joint tort-feasor for a personal injury to an employe, though his negligence was the negligence of his principal, and he may be properly joined with the railroad company in an action to recover for the injury. *pp. 98, 99.*

SAME.—*Personal Injuries.—Negligence.—Proximate Cause.—Employers Liability Act.*—In an action against a railroad company and yardmaster for the death of a switchman while fastening broken cars together with a chain, under the orders of the yardmaster, the answers to interrogatories showed that an engineer, in response to a signal given by a brakeman, a fellow servant of decedent, backed his engine against the cars and caused the injury resulting in decedent's death. The yardmaster saw the engine go upon the side-track on which the cars were standing which were being fastened together, and, having knowledge of the threatened danger to decedent, did nothing to prevent the act of the engineer. *Held*, that the negligence of the yardmaster was the proximate cause of the injury. *pp. 99-106.*

TRIAL.—*Evidence.—Harmless Error.*—Available error can not be predicated upon the exclusion of evidence, where the complainant during the trial received the full benefit of the evidence claimed to have been wrongfully excluded. *pp. 106, 107.*

SAME.—*Evidence.—Rules of Railroad Company.*—It was not error to admit in evidence, in an action against a railroad company, the rules of the company printed on the reverse side of a large sheet containing a time-table which as noted at the head thereof was to take effect at a time subsequent to the injury for which the suit was brought, where no reference was made to the rules on the reverse side and it was shown by proof *aliunde* that the rules were in force and effect at the time of the injury. *p. 107.*

WITNESSES.—*Parties.—Executors and Administrators.—Death by Wrongful Act.*—A defendant in an action, under §285 Burns 1901, for damages for a death by wrongful act, is not rendered incompetent to testify as a witness in such action by §506 Burns 1901, since it

is not a case in which a judgment may be rendered for or against plaintiff's decedent. *Hudson* v. *Houser*, 123 Ind. 309, overruled. *pp. 107–110.*

From Delaware Circuit Court; *J. G. Leffler*, Judge.

Action by Richard Charman, administrator of the estate of Frank Coffman, deceased, against the Lake Erie & Western Railroad Company and another. From a judgment for plaintiff, defendants appeal. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*J. B. Cockrum, W. H. H. Miller, J. B. Elam, J. W. Fesler, S. D. Miller, R. S. Gregory, A. C. Silverburg* and *W. J. Lotz,* for appellants.

*R. C. White, I. J. Young, W. W. Mann* and *Lincoln Lesh,* for appellee.

HADLEY, J.—Suit by appellee against appellants to recover damages for negligently causing the death of Frank Coffman, appellee's decedent. The complaint is in two paragraphs, to which appellants separately demurred for insufficiency of facts—the railroad company generally, and Oliver to each paragraph thereof. These demurrers were overruled, and appellants answered jointly by general denial. Trial by jury, and a general verdict against both defendants for $2,100, with which were returned answers to a large number of interrogatories.

Appellants have separately assigned as error the overruling of the demurrers to the complaint, the overruling of their separate motions for judgment on the answers to interrogatories notwithstanding the general verdict, and their motions for a new trial.

The first paragraph of the complaint alleges, in substance, that the deceased was a brakeman and a member of a switching crew in the yard of appellant railroad company at Muncie, Indiana; that on the 29th day of October, 1899, while the decedent was in the performance of his duties as a brakeman, he was negligently commanded by

Lake Erie, etc., R. Co. v. Charman.

the defendant railroad company, and its codefendant Oliver who was then the duly appointed and acting yardmaster of said railroad company in charge of its said Muncie yard, and to whose orders decedent was then and there bound to conform, to go between and couple, by means of a chain, two broken and damaged cars which were without deadwoods or sufficient drawbar, and had nothing to prevent a full end face collision when said cars were set in motion; that while conforming to said command, and while between the damaged cars, where he was required to be to effect said coupling, the defendants negligently, and without notice or warning to the decedent, caused and permitted a locomotive controlled by the railroad company's servants to be propelled in and upon the track in said yards, upon which the decedent was engaged in making said coupling, and against the train of which the damaged cars were a part, thereby suddenly and violently pushing said damaged cars together, whereby the decedent was crushed and instantly killed.

1. The objection presented to the first paragraph is that its averments fail to show that the plaintiff was appointed administrator for the specific purpose of prosecuting this action, the argument being that a general administrator is not authorized to bring such suit, for the reason that he represents the estate of the deceased generally, and not the widow and children or next of kin. We are unable to approve this argument. The action given by §285 Burns 1901 is the creation of a new and independent right. *Pittsburgh, etc., R. Co.* v. *Hosea,* 152 Ind. 412, and cases cited. When a new right is created by statute, and a mode prescribed for its enforcement, that mode must be pursued to the exclusion of all others. *Storms* v. *Stevens,* 104 Ind. 46; *Boyd* v. *Brazil Block Coal Co.,* 25 Ind. App. 157.

The legislature, for reasons of its own, designated the personal representative of the deceased, who is understood

to be the administrator of such deceased person's estate, as the only person competent to prosecute an action under said section. It doubtless had in view cases where there should be a failure of widow and children, or where the beneficiaries should be minors or numerous, and as a matter of convenience deemed it expedient to provide for the prosecution of such actions by a trustee for the use of the persons entitled. The designation of the personal representative of the deceased as such trustee would seem to have no other significance than is implied from the fact that such officer is convenient, and usually selected for his probity and friendly relation with the family of the deceased. There is nothing in the language of the statute that suggests the appointment of a special representative for the single purpose of prosecuting the suit. There is nothing in the act forbidding one person from acting in both capacities. There is no duty imposed by the act that may become inconsistent with the duties of a general administrator. And, in fine, an administrator, clothed with no other powers or duties but to prosecute a suit for the benefit of the widow and children would be in no sense the personal representative of the deceased. So we conclude that the general administrator of the estate of a decedent is the personal representative of such deceased person within the meaning of §285, *supra,* and the only proper plaintiff in the action given by said section. The first paragraph of the complaint is therefore good.

The railroad company's demurrer being general to the complaint, it was properly overruled upon finding the first paragraph sufficient. It therefore serves no useful purpose to consider the second paragraph, so far as the railroad company is concerned.

The second paragraph of complaint, in addition to the allegations set forth in the first paragraph, contained averments that the death of Coffman was caused by the negligence of an engineer in the service of the company and

in charge of one of the company's locomotive engines. Whether these averments, and some others concerning the ordering of Coffman to perform a service outside, and not embraced within, the terms of his contract of employment, were sufficient as against the company, can not be challenged by appellant Oliver on his separate demurrer to a paragraph that clearly states a cause of action against him on other grounds. The averments of both paragraphs sufficiently show that the proximate cause of the accident was the combined acts of Oliver in ordering the deceased into a dangerous place, and, while there engaged, and without any notice or warning, causing an engine to be run against the cars, suddenly and violently pushing them together, and are clearly sufficient under §7083 Burns 1901. *Louisville, etc., R. Co.* v. *Wagner,* 153 Ind. 420. The averments also show that Oliver was, at least under §7083, *supra,* acting as a vice-principal, and not as a fellow servant, and, though his negligence was the negligence of his principal, he is also personally liable therefor as a joint tort-feasor, and may be properly joined with the railroad company in an action to recover for the injury. See this same case *(Chapman* v. *Lake Erie, etc., R. Co.)* in 105 Fed. 449, on motion to remand to state court, where the precise question is fully considered, and, we think, correctly decided. See, also, *Wright* v. *Compton,* 53 Ind. 337; *McNaughton* v. *City of Elkhart,* 85 Ind. 384; *South Bend Mfg. Co.* v. *Liphart,* 12 Ind. App. 185. Cooley, Torts (2d ed.), 164. The demurrers to the complaint were properly overruled.

2. It is next insisted by each of the appellants that the court erred in overruling his separate motion for judgment upon the answers to interrogatories notwithstanding the general verdict. The answers referred to disclose the following facts: At the time of his death Coffman, plaintiff's intestate, was in the employ of appellant railroad company, and belonged to a switching crew composed of

McGill, as foreman, and the decedent and one Dowd as brakemen. This crew used engine thirty-two, and, with two or three other like crews, their duties were confined to the switching of cars, and the making up of trains in appellant's railroad yard at Muncie. Appellant Oliver was his co-appellant's yardmaster at Muncie, and all the employes in the yard, including the foremen or conductors of said switching crews, were subject to his orders and directions, as were also all employes operating through and out trains with respect to where they should go with their engines and trains in the yard. The yard crews had precedence over the crews of through trains in the use of the sidings and spur tracks of said yard, and a conductor or foreman of a local crew could require crews of through or outgoing trains to keep off side-tracks where such local crew was making up a train. During the early morning of October 29, 1899, the night crew made up freight-train 120 on side-track number seven, which train was scheduled to leave Muncie for the east about 7 o'clock a. m., immediately after the passage of a west-bound passenger-train due at that hour. The deceased belonged to the day switching crew, and with his companion Dowd, and foreman McGill, came on duty at 7 o'clock a. m. Howard, the yardmaster, came into the yard at the same time. The caboose of train 120 was at the west end of the train, and east of it were about eighteen freight-cars, mostly coupled together, extending to near the east end of track number seven. The second car east of the caboose was a broken or damaged car, so broken that it could not be coupled to the adjoining car in the usual way, with an interval of two feet between the broken car and the car next east. Appellant Oliver went to the caboose of train 120 and procured therefrom a chain carried for such purpose, and went with decedent and his switching mate Dowd to chain the broken car to the one east of it, to be hauled to the company's shops in Ohio. The two switchmen went between

Lake Erie, etc., R. Co. *v.* Charman.

the cars for the purpose of chaining them together, and at once entered upon the execution of the work. Soon after, one Steiner, an engineer in the employ of the company, came from the roundhouse in charge of engine forty-seven for the purpose of hauling train 120 eastward, as soon as the 7 o'clock passenger-train should go west. Steiner, accompanied by Schultz, the head brakeman of train 120, started to go eastward with said engine forty-seven over passing track number three, when McGill, conductor of switching-engine thirty-two, and foreman of Coffman and Dowd, told Schultz that he had better stay where he was until the passenger-train went west. It was Schultz's duty to obey the orders of McGill. Schultz and Steiner, not heeding what McGill said, continued eastward with engine forty-seven, passed out upon the main track, and when they arrived at the east end of track seven, Schultz left the engine and opened the switch to side-track seven, and signaled Steiner to back the engine in upon said track, which he proceeded to do. The cars constituting train 120 approached so near the east end of track seven that there was not sufficient room for Steiner's engine to pass onto said track far enough to clear the main track to avoid the west-bound passenger-train. When it was shown that the engine would not clear, Schultz signaled to Steiner to back the cars, which he did, thereby causing the death of Coffman. It was the duty of Steiner to obey the signals of Schultz. Appellant Oliver, from his position near where Coffman and Dowd were engaged in chaining the cars, could not see that engine forty-seven had backed into the east end of track seven, but knew before Coffman was injured that it had backed in, and, according to the usage of the yard, had reason to anticipate that it would back in, and, according to the custom of the yard, Oliver had reason further to anticipate that if the engine did back in at the east end, and it was necessary for room, it would back the standing cars without first ascertaining through the

switchman the condition of things at the west end of the train, and without giving warning of his intention to move the cars. Under prevailing customs of the yard, Oliver had reason to believe that the cars might be moved by an engine while the men were engaged in fastening them together.

It is a well-grounded rule that a general verdict will stand as against answers to interrogatories, unless it appears that answers to material questions of fact and the general verdict are so inconsistent and repugnant that both can not be true. A general verdict is the jury's deduction from all the issuable facts proved in the case, and an isolated and single fact disclosed by an answer to an interrogatory will not be permitted to overthrow the general verdict, if the latter can be sustained by any supposable state of facts provable under the issues. Hence, in an effort to reconcile the two, it is the duty of the court to indulge all reasonable presumptions arising within the issues against the special answers, and in favor of the general verdict. *Southern Ind. R. Co.* v. *Peyton,* 157 Ind. 690, and cases cited. Therefore, in considering the motion before us, we must assume as proved all the issuable facts necessary to sustain the verdict that are not specifically found to the contrary.

It is contended by appellants that these answers conclusively show that the direct and proximate cause of the accident was the negligence of Schultz, the brakeman, in signaling Steiner to back the cars without first ascertaining that it was safe to do so, and that notwithstanding appellants' negligence, they can not be held liable, because the accident would not have happened but for the intervention of the independent, wrongful, act of Schultz. This contention must be sustained, unless it turns out that the negligence of Schultz was not the proximate cause of the plaintiff's injury.

It is not always the most direct and immediate cause of an injury that is the proximate cause, within the mean-

Lake Erie, etc., R. Co. *v.* Charman.

ing of the law of negligence. We quote: "Negligence may, however, be the proximate cause of an injury of which it is not the sole or immediate cause. If the defend- ant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time.  *  *  * But the practical construction of *'proximate cause'* by the courts is a cause from which a man of ordinary experience and sagacity could foresee that the result might probably ensue." Shearman & Redfield, Negligence (3d ed.), §10.

In determining proximate cause, the inquiry is directed to the responsible cause, without reference to whether it is the first or last in the succession of events that resulted in the plaintiff's injury. And that cause will be held proximate which is shown to be active, operative, and continuing, and the probable and natural source of the injury; that is to say, where the sequence or injury complained of under the circumstances surrounding the case is such as might and ought to have been foreseen by a person of ordinary sagacity as a probable result of the thing done, it will be deemed the responsible or proximate cause. *Walters* v. *Denver, etc., Light Co.,* 12 Colo. 145, 148, 54 Pac. 960; *West Mahonoy Tp.* v. *Watson,* 116 Pa. St. 344, 9 Atl. 430, 2 Am. St. 604; *Scott* v. *Hunter,* 46 Pa. St. 192, 84 Am. Dec. 542; *Wiley* v. *West Jersey R. Co.,* 44 N. J. L. 247; *Browning* v. *Wabash, etc., R. Co.,* 124 Mo. 55, 27 S. W. 644; *Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242, 260, 32 N. E. 285, 18 L. R. A. 215; *Gage* v. *Pontiac, etc., R. Co.,* 105 Mich. 335, 63 N. W. 318.

Whatever results a wrongdoer, from his surroundings, could have foreseen or anticipated by the exercise of ordi-

nary care, as likely to flow from his act, will be accounted natural and probable consequences, for which the law will hold him responsible. *Wiley* v. *West Jersey R. Co., supra; Scott* v. *Hunter, supra.*

The averments of the complaint and answers to interrogatories show these facts: Appellant Oliver, the yardmaster, was empowered by his co-appellant railroad company to act for it in the management and control of all business of the yard, and in commanding and directing the duties of all employes engaged therein. Upon coming into the yard he observed, near the rear of a train that had been made up in the yard during the night to go east, two freight cars with their deadwoods or bumpers broken off, and nothing to prevent a full-end collision when set in motion. It was designed that these cars should be coupled together and hauled to the company's shops in Ohio for repairs. Oliver directed the deceased and his mate to go between the cars and chain them together. It was not an ordinary duty required of a brakeman. The coupling with chains would necessarily require considerable time. The cars stood in a train of dead or still cars. The locomotive that was to take the train out had not yet come from the roundhouse. When the two men entered between the cars and began the coupling, the work was apparently safe, and they had no knowledge then, nor until after the accident, that danger was to be apprehended from a locomotive coming in at the east end and pushing the cars together. Oliver, standing by where the work of coupling was in progress, did know that the locomotive that was to take out the train had left the roundhouse and had entered the east end of the switch upon which the train was standing, and from yard usage had reason to anticipate that the engineer would back the cars without giving notice of his intention to do so. With this knowledge of threatening danger, and the further knowledge that the men engaged between the cars could not see what was transpiring

about them, Oliver failed to give any warning or take any step to prevent the backing of the cars.

Under these facts it can not be said that Oliver was free from fault. Having ordered the men into a place which to them was apparently safe, but known to him to be one of great peril from a cause not present, it was his duty not only to disclose to them the source and nature of impending danger, but to put forth effort, commensurate with the peril and emergency, to caution the men, and to direct the engineer in charge of the threatening locomotive, as he had the authority to do, to avoid moving the train while the men were so exposed. As was said by Mitchell, J., in *Cincinnati, etc., R. Co.* v. *Long,* 112 Ind. 166, 170: "It is a well settled and reasonable proposition that an employer, who places an employe in a perilous situation, and exacts of him duties which necessarily require his attention and absorb his mind, must exercise vigilance in protecting the employe from perils not directly arising from the work in hand." See, also, Wood, Master & Servant (2d ed.), §368.

If Oliver had known the engine which had come in at the east end of the switch would push the broken cars violently together without notice, and, so knowing, gave no warning to the men who were unsuspectingly absorbed in the business of adjusting the chains, and took no step to protect them against injury, his gross negligence would be indisputable. Having, from usage in the yard, reason to anticipate that it would occur, made him none the less culpable. The act of Schultz in causing Steiner to back the cars without warning, while the most immediate, can not be said to be the principal or proximate cause. It was a condition or link in the chain of causation through which the negligence of Oliver operated in producing the injury. Oliver knew of the danger impending by the presence of the locomotive at the east end of the switch, and took no steps to avert it by ordering Schultz and Steiner

not to disturb the cars. He was responsible for the perilous situation occupied by the decedent, and his omission of duty to bestow reasonable protection was the initial, continuing wrong, and at least was combined, and concurred in time and operation with the act of Schultz in causing the death of Coffman. See *Cleveland, etc., R. Co.* v. *Wynant,* 134 Ind. 681, 694; *Board, etc.,* v. *Mutchler,* 137 Ind. 140.

The entry of a locomotive and the backing of cars without notice by some one in charge of an engine were in accordance with prevailing custom in the yard, and, because ordinary and usual occurrences, were reasonably to be expected. Oliver, therefore, was in a position, with respect to the obeying employes, where he was bound to take notice that some one in charge of a locomotive engine was likely to push the broken cars together and inflict serious injury upon them, and the injury actually suffered being such as might have been foreseen and prevented by the exercise of due care, must be adjudged the natural sequence of Oliver's omission of duty. We therefore conclude that the answers to interrogatories are not inconsistent with the general verdict, and the motion for judgment thereon was properly overruled.

3. Under the motion for a new trial it is first claimed that the court erred in denying appellants the right to inquire of the administrator in his cross-examination concerning a separation between the decedent and his wife, existing at the time of the latter's death. The record discloses that the objection interposed to the inquiry was solely on the ground that it was not proper cross-examination, and that the testimony was excluded for the same reason. Besides, it further appears that at a subsequent stage of the trial, when the widow was testifying, appellants, without objection, inquired and were answered fully by her concerning the separation, the extent of support she was at the time receiving from her husband, and the relations existing between them at the time of his death. Appellants

having during the trial received the full benefit of the testimony which they claim, but which we do not concede, was at one time wrongfully excluded, it is clear that they were not damaged and are in no condition to complain.

4. Complaint is next made of the admission in evidence of certain rules promulgated by the company for the government of its business and employes. These rules were printed on the reverse side of a large sheet containing a time-table, which, as noted in large letters at the head, was to take effect on January 1, 1900. Nothing appeared on the side of the sheet where the rules were printed, or elsewhere, when the rules there set forth, had, or should take effect. The accident occurred in the previous October. From this it is argued that the time fixed for the taking effect of the time-table conclusively showed that the rules printed on the other side took effect at the same time, and were not, therefore, operative at the time of the intestate's death. The time-table made no reference of any kind to the rules printed on the opposite side of the sheet, or that they were there printed, and certainly nothing appears anywhere on the paper affecting or disclosing the time of taking effect of said rules. The time of taking effect was therefore a matter of proof *aliunde,* and it was abundantly shown that the rules read to the jury were all in force and effect at the time of the decedent's injury. The court did not err in admitting the rules.

5. A more serious question arises on the exclusion of appellant Oliver as a witness on his own behalf and on behalf of his co-appellant. The ground for exclusion was incompetency, under §506 Burns 1901, which is as follows: "In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose in-

terest is adverse to such estate, shall not be a competent witness as to such matters against such estate." This provision is one of the exceptions to the general statutory rule laid down in §504 Burns 1901, namely, that all persons, whether parties to or interested in the suit, shall be competent witnesses in a civil action, except in certain specified cases. The evident purpose of the legislature was to extend to all persons *compos mentis* the right to testify in an action, except where the proffered testimony will operate as a violation of confidence reposed by a professional or marital relation, or work manifest injustice to a deceased person's estate. The last exception referred to, being also the one here involved, rests upon the principle of fairness, and is meant to limit testimony only so far as to prohibit one litigant from testifying in his own behalf concerning the controverted matter, when the other party to the transaction is dead and his version of the transaction is not available to his estate. *Michigan Trust Co.* v. *Probasco,* 29 Ind. App. 109.

It will be observed from the above statute that the official character of the plaintiff is no test of the competency of coparties to testify in the case. In fact, a party to an action by an administrator or executor will be presumed a competent witness, as in other actions, until it is shown that he sustains such a relation to the case as brings him clearly within the statutory exceptions. Many instances have been pointed out by this and the Appellate Court wherein parties to such suits are competent witnesses. Among the more recent of these cases, see *Lamb* v. *Lamb,* 105 Ind. 456; *Louisville, etc., R. Co.* v. *Thompson,* 107 Ind. 442, 456, 57 Am. Rep. 120; *Bischof* v. *Mikels,* 147 Ind. 115; *Cincinnati, etc., R. Co.* v. *Cregor,* 150 Ind. 625; *Turpie* v. *Lowe,* 158 Ind. 314; *Michigan Trust Co.* v. *Probasco,* 29 Ind. App. 109; *Hart* v. *Miller,* 29 Ind. App. 222; *Schlemmer* v. *Schendorf,* 20 Ind. App. 447; *Lewis* v. *Buskirk,* 14 Ind. App. 439. One important test of com-

petency under the statute is whether the case is such a one that a judgment may be rendered for or against the estate represented by the administrator. If it is found that under the facts and nature of the case no judgment can be awarded, either for or against the estate of the plaintiff's decedent, then all parties are fully competent.

Is this a case in which a judgment may be rendered for or against the estate of appellee's decedent? The question must be answered in the negative. Coffman's personal action for the injury died with the person. §283 Burns 1901. In the absence of legislation, no action for damages in behalf of anyone could have been maintained for the wrong in causing his death. The legislature, however, by §285 Burns 1901, created a right of recovery, not in behalf of the decedent's estate, but for the exclusive use and benefit of the widow and children or next of kin who are presumed to have sustained a pecuniary loss by the death. This latter section affords the only authority for an action for the death of Coffman, and it can be maintained only upon the terms, and for the use specified therein. Coffman's estate has no interest whatever in the prosecution or result of this suit. The assets of his estate are not liable for costs or other charges accruing therein. *Yelton* v. *Evansville, etc., R. Co.,* 134 Ind. 414, 21 L. R. A. 158. Under no circumstances can a judgment be rendered for or against his estate. §285 Burns 1901; *Louisville, etc., R. Co.* v. *Goodykoontz,* 119 Ind. 111, 12 Am. St. 371; *Hilliker* v. *Citizens St. R. Co.,* 152 Ind. 86, and cases cited; *Pittsburgh, etc., R. Co.* v. *Moore,* 152 Ind. 345, 358, 44 L. R. A. 638; *Pittsburgh, etc., R. Co.* v. *Gipe,* 160 Ind. 360.

It therefore becomes clear that this is not a case wherein a coparty with an administrator is within the exceptions stated in §506, *supra.* And we do not perceive how said section can be made applicable to any case prosecuted under §285, *supra,* for the use of the widow or next of kin.

*Louisville, etc., R. Co.* v. *Thompson, supra.* So far as the opinion in *Hudson* v. *Houser,* 123 Ind. 309, is in conflict with the view here expressed, the same is overruled. Appellant Oliver was a competent witness, both for himself and co-appellant, and for error in excluding him the judgment must be reversed.

Judgment reversed, and cause remanded, with instructions to grant each of the appellants a new trial.