## The Cleveland, Cincinnati, Chicago and St. Louis Railway Company *v.* Quinn, Administratrix.

[No. 7,753. Filed April 4, 1913. Rehearing denied June 25, 1913.]

1. MASTER AND SERVANT.—*Railroads.—Injuries to Servant.—Complaint.—Sufficiency.*—In an action to recover for the death of a railroad brakeman, a complaint alleging that defendant's servant in charge of a block signal system negligently failed to give the proper signal and warning to a freight train following the one on which decedent was employed and permitted it to enter the block before decedent's train had departed therefrom, contrary to the rules of the company, that decedent had no knowledge that such train was following, that the servant in charge of such block signal knew the position of decedent's train, and knew the rules prohibiting a second train entering the block until the first had departed, and that with such knowledge he admitted such second train, traveling at a great speed, into such block, that the crew of the second train had no knowledge that the other was within the block and that such second train rushed around a sharp curve at the rate of forty miles per hour, without any warning, and collided with the first train killing decedent who was in the position required of him by defendant's rules and orders, sufficiently shows that the death was caused by the negligence of defendant's signalman, and stated a cause of action under subd. 4, §1, of the Employers' Liability Act (Acts 1893 p. 294, §8017 Burns 1908). pp. 17, 18.

2. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Proximate Cause.—"Occasioned."*—A complaint to recover for the

wrongful death of a servant, alleging that the injury and death was "occasioned by the negligence of defendant through its agents, servants and employes as aforesaid and as a proximate result thereof," is a sufficient averment that the negligence complained of was the proximate cause of the injury, since "occasioned" may be properly regarded as synonymous with "caused." p. 18.

3. APPEAL.— *Record.— Matters    Included.— Instructions.*— Under §561 Burns 1908, Acts 1907 p. 652, providing among other things that "the court shall indicate before instructing the jury, by a memorandum in writing at the close of the instructions so requested, the numbers of those given and of those refused, and such memorandum shall be signed by the judge," instructions are not properly in the record and cannot be considered on appeal where the record does not disclose that the trial judge signed the instructions tendered. p. 19.

4. APPEAL.—*Record.—Matters Included.—Instructions.*—To identify properly and make instructions a part of the record under §561 Burns 1908, Acts 1907 p. 652, and save exceptions thereto, there must be a substantial compliance with all the provisions of such section. p. 19.

5. APPEAL.—*Record.—Questions Reviewable.—Instructions.*—Where all of the instructions are not in the record, alleged error in those that are cannot be considered. p. 20.

6. EXCEPTIONS, BILL OF.—*Filing.—Extension of Time.*—Under §661 Burns 1908, Acts 1905 p. 45, authorizing the court on a proper showing, before the expiration of the time first given, to extend the time for filing a bill of exceptions, it is the court's duty to extend the time if the failure is due to the court reporter's inability to prepare and furnish a transcript of the evidence, so that an extension of time made on the affidavit of the court reporter showing such inability was not erroneous. p. 20.

7. MASTER AND SERVANT.—*Railroads.—Injuries to Servant.—Questions for Jury.—Contributory Negligence.*—In an action to recover for the death of a railroad brakeman in a rear end collision, it was for the jury to determine whether the decedent's failure to place torpedoes on the track to protect his train from another following it, or to take other precautions provided by the rules of the company, constituted contributory negligence, where there was no evidence to show that decedent had reason to believe that conditions required the taking of such precautions at that time. p. 20.

8. MASTER AND SERVANT.—*Railroads.—Injuries to Servant.—Proximate Cause.—Jury Question.*—In an action for the death of a railroad brakeman in a rear end collision, where a second train, through the negligence of defendant's servant in charge of a

block signal, was permitted to enter the block before decedent's train had departed therefrom, contrary to defendant's known rules which prohibited more than one train at a time from being within the limits of a block, the question of whether the negligence of such signalman, or the conduct of decedent who failed to take certain precautions provided by other rules of the company, was the proximate cause of the injury, was for the jury. p. 23.

9.  MASTER AND SERVANT.—*Railroads.—Injuries to Servant.—Contributory Negligence.—Jury Question.*—The question of whether a brakeman who was killed in a rear end collision should have seen or heard the approaching train in time to have avoided the collision was one of fact for the jury, where the evidence showed that the engine and train on which decedent was at work was moving backward and forward with the usual noises accompanying such movement, and that the other train approached at a rapid rate of speed around a sharp curve, with the view obstructed by timber and heavy fog.  p. 23.

10.  MASTER AND SERVANT.—*Railroads.—Injuries to Servant.—Contributory Negligence.—Evidence.*—Where the evidence showed that a brakeman, who was killed in a rear end collision, knew defendant's rule for the operation of its block signals, prohibiting more than one train at a time within the limits of a block, that he had been cautioned not to forget to flag a train that was following and that he failed to flag such train or take the precautions prescribed by other rules of the defendant, the jury was justified in concluding that decedent had a right to rely upon the proper operation of the block signal system and that he was therefore not required under the ordinary rules of prudence to take such other precautions.  p. 24.

From Randolph Circuit Court; *James S. Engle,* Judge.

Action by Bertha L. Quinn, administratrix of the estate of Rufus L. Quinn, deceased, against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company.  From a judgment for plaintiff, the defendant appeals.  *Affirmed.*

*Frank L. Littleton* and *Macy, Nichols & Bales,* for appellant.

*Theodore Shockney* and *Caldwell & Parry,* for appellee.

SHEA, J.—Action by appellee against appellant to recover damages for the death of her husband, Rufus L. Quinn, alleged to have been caused by the latter's negligence.  The

original complaint was in three paragraphs.  Later a fourth was filed, and separate demurrers to each were overruled. Appellant answered in two paragraphs, (1) general denial; (2) statute of limitations addressed to the fourth paragraph only.  Demurrer to second paragraph of answer overruled.  Appellee then filed a reply in two paragraphs; (1) that the cause of action set up in the fourth paragraph of complaint is the same as in the first three paragraphs which were filed within two years after the injury complained of; (2) general denial.  Appellant's demurrer to the first paragraph of this reply was overruled.  The issues formed were submitted to a jury for trial.  Before the close of the evidence appellee withdrew the first three paragraphs of complaint.  The cause was tried and determined on the fourth paragraph and the issues formed thereon, the jury returning a verdict for appellee.  Appellant's motion for a new trial was overruled and judgment rendered on the verdict.

The errors assigned and argued by appellant are the overruling of its demurrer to the fourth paragraph of complaint and the overruling of its motion for a new trial.

The allegations of the fourth paragraph of complaint are substantially as follows: That appellee, Bertha L. Quinn is the administratrix of the estate of Rufus L. Quinn, deceased, appointed September 26, 1908; that appellant is a corporation operating a railroad through Vigo County in the State of Indiana, engaged in the business of carrying passengers and freight for hire; that appellant operated its railroad and controlled its cars, engines and trains by means of what is known as the "block system," that is, its railroad was divided into blocks with a block station, block signal system and a telegraph station and office at either end of said blocks; that each of the block stations and telegraph offices was in charge of and operated by signalmen and telegraph operators, who were employes of appellant.  By appellant's rules and regulations then in force, in the

operation of its railroad under the "block system," but one train of cars or locomotive engine was permitted to be on its main track within any one of said blocks at the same time, and after a signalman in charge of any block station had admitted a train or locomotive into such block, it was his duty to block out, therefrom by means of certain signals, all other trains going in the same direction, until he had received information from the advance terminus of such block that the train previously admitted had departed, and was not occupying the main track within that block. This manner of operating said railroad was well known to all of appellant's agents and servants, especially to Rufus L. Quinn; that one of the blocks of appellant's railroad was limited on the east by Burnett and on the west by Markles, both in Vigo County, Indiana; that at said time the station at Burnett was in charge of a signalman and operator who was the agent and servant of appellant. That on October 17, 1906, appellant caused a certain freight train with engine and caboose attached, to start from Indianapolis and pass westward through Burnett and the block station there, into the block limited as aforesaid. Said train was manned by an engineer, fireman and a front and rear brakeman, and was in charge of a conductor, and upon this train Quinn was employed by appellant as rear brakeman. As such he was required by appellant's rules, regulations and orders to be on the rear of the train when it was moving or ready to move. At the time of his injuries Quinn knew the train was within the block between Burnett and Markles. About one-half mile east of Markles, within said block, was a spur track, extending off from appellant's line of railroad to the northward. Pursuant to a signal and order received at Burnett, the train passed westward into the block, stopped on the main track at said spur track, and the crew proceeded to set out certain cars from the train onto the spur track. That on the same day appellant caused a second freight train manned by an engineer, fireman, brakemen and a con-

ductor in charge thereof, to leave the city of Indianapolis, over its line of railway, following the first freight train on the same track and in close proximity thereto; that as the second train approached Burnett, and while the first train was within the block, the signalman at Burnett carelessly and negligently gave said train a signal of a clear track to enter that block, and it did so enter; that said signalman at that time had full notice and knowledge of the location of the first train, and knew the danger to which the crew thereof would be subjected if the second freight train should be permitted to enter; that the crew of the second train had no notice or knowledge of the position of the first train. That the signalman carelessly and negligently failed to give the crew of the second train any notice, signal or order that the first train was within the block, and carelessly and negligently opened said block, and the servants of appellant propelled said train and locomotive through the station at Burnett, into said block at a great rate of speed, to wit, forty miles an hour, into the first train and caboose attached thereto. That the second train approached the first train around a sharp curve; that the first train had completed the work of switching the cars onto the spur track and had started westward to go out of the block. At that time Quinn was in the line of his duty as rear brakeman; that he was stationed on the rear of the first train and the rules and regulations of the company made it his duty to be so stationed; that the second train having been let into said block by the negligence of the signalman came around the curve with great speed, and under such circumstances was driven into the rear of the first train and was run on, over and against said Rufus L. Quinn with great force and violence and that as a proximate result thereof he was injured so that he died on October 20, 1906; "that said injury and death of said Rufus L. Quinn as aforesaid, was occasioned by the negligence of the defendant through its agents, servants and employes as aforesaid, and as a proximate result thereof"; that

Quinn left surviving him appellee, as his widow and sole heir.

The objections urged against this paragraph are that it affirmatively shows appellee's decedent was not exercising due care at the time of his injury; that the only negligence charged is that appellant's signalman permitted the second train to enter the block without in any way informing the crew in charge thereof, of the presence therein of the train on which Quinn was stationed. Appellant insists that "the facts plead do not account for the collision of the two trains, much less for the injury to plaintiff's decedent. The facts plead leave it as a mere conjecture whether the negligence of the signalman was the proximate cause of the accident and are therefore insufficient." This paragraph of complaint contains all the essential allegations charging appellant's agent and servant in charge of the block signal station at Burnett with having negligently and carelessly failed to give the proper signal and warning to the second freight train, and permitted it to enter said block before the train upon which appellee's decedent was at work, had departed therefrom, contrary to the rules and regulations of the company; that Quinn had no knowledge that the second train was following; that under appellant's rules no other train should have been admitted to such block until Quinn's train had departed therefrom, which fact was well known to all the parties concerned; that the agent at Burnett knew the position of Quinn's train, and with such knowledge admitted the second train traveling west at great speed on the same track, into such block; that the crew of the second train had no knowledge that the train was within the block; that the second train rushed into the block, around a 'sharp curve at the rate of forty miles per hour, without any warning, and ran into Quinn's train and killed him; that Quinn, at that time, in obedience to the rules and orders of appellant was on the rear of his

train. It is urged that the complaint shows Quinn's negligence to have been the cause of his death. In the case of *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, 103, 67 N. E. 923, it is said "that cause will be held proximate which is shown to be active, operative and continuing, and the probable and natural source of the injury." The allegations of the complaint sufficiently charged that the negligence of the signalman was the proximate cause of Quinn's death. *Lake Erie, etc., R. Co.* v. *Charman, supra; Brown* v. *American Steel, etc., Co.* (1909), 43 Ind. App. 560, 88 N. E. 80; *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 87 N. E. 723; *Domestic Block Coal Co.* v. *De-Armey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Inland Steel Co.* v. *Yedinak* (1909), 172 Ind. 423, 87 N. E. 229, 139 Am. St. 389; *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 88 N. E. 1073, 89 N. E. 485; *Bessler* v. *Laughlin* (1907), 168 Ind. 38, 79 N. E. 1033.

In support of its demurrer appellant criticises the following language: "That said injury and death of Rufus L. Quinn as aforesaid, was *occasioned* by the negligence of the defendant through its agents, servants and employes as aforesaid and as a proximate result thereof." It is insisted that the averment that the injury was "occasioned" as a proximate result of such negligence is not an averment that such negligence was the proximate *cause* of the injury. The averring words of this entire allegation are, "was occasioned." It is our opinion that the use of the word "occasioned" in the complaint may be regarded as synonymous with "caused" and the language is not sufficiently objectionable to make the complaint obnoxious to the demurrer. The Century Dictionary defines "occasion"—"to bring about," "to impel or induce by circumstances," and as synonymous with "be the cause of."

1. The fourth paragraph of complaint states a cause of action under subd. 4, §1 of the employers' liability

act (Acts 1893 p. 294, §8017 Burns 1908), and the demurrer was properly overruled.

In support of the motion for a new trial appellant assigns that the court erred in giving and refusing to give certain instructions. Appellee earnestly insists that the instructions are not properly in the record. Appellant contends that it has substantially complied with §561 Burns 1908, Acts 1907 p. 652, which provides among other things that: "The court shall indicate, before instructing the jury, by a memorandum in writing at the close of the instructions so requested, the numbers of those given and of those refused, and such memorandum shall be signed by the judge." Appellant's able counsel have not pointed out the page and line of the record where the signature of the judge may be found. A diligent search of the record fails to disclose that the trial judge signed the instructions tendered by appellee and appellant as provided in said section of the statute. To identify properly and make instructions a part of the record under this section, and save exceptions thereto, there must be a substantial compliance with all of its provisions. *Baker* v. *Gowland* (1906), 37 Ind. App. 364, 76 N. E. 1027; *Mace* v. *Clark* (1908), 42 Ind. App. 506, 85 N. E. 1049. The failure of the trial judge to sign the memorandum at the close of these instructions, is, in our judgment fatal, and errors assigned with respect thereto can not be considered by this court. *Wiseman* v. *Gouldsberry* (1910), 45 Ind. App. 677, 91 N. E. 616; *Indianapolis, etc., R. Co.* v. *Eagan* (1909), 171 Ind. 569, 86 N. E. 966; *Muncie, etc., Traction Co.* v. *Hall* (1909), 173 Ind. 95, 89 N. E. 484; *Elrod* v. *Purlee* (1905), 165 Ind. 239, 73 N. E. 589, 74 N. E. 1085; *Fowler* v. *Fort Wayne, etc., Traction Co.* (1910), 45 Ind. App. 441, 91 N. E. 47; *Strong* v. *Ross* (1905), 36 Ind. App. 174, 75 N. E. 291.

It is likewise insisted that the instructions given by the court upon its own motion are not properly in the record. They are, however, signed by the trial judge. If they

were properly in the record, and error could be predicated upon them or any one of them, this court is not prepared to say that such erroneous instruction was not withdrawn by some other instruction given. "The general rule declared by the decisions of this court is that errors in instructions cannot be considered when all the instructions are not in the record." *State* v. *Winstandley* (1898), 151 Ind. 495, 499, 51 N. E. 1054, and cases cited. See, also, *Board, etc.* v. *Gibson* (1902), 158 Ind. 471, 63 N. E. 982; *Lake Erie, etc., R. Co.* v. *Holland* (1904), 162 Ind. 406, 416, 69 N. E. 138, 63 L. R. A. 948. We are convinced by an examination of the record that the instructions are not properly in the record by any of the methods provided by our statute.

Appellant also insists that the verdict is not sustained by sufficient evidence and is contrary to law. Appellee urges that the evidence is not in the record for the reason that the court extended the time for filing the original bill of exceptions upon the affidavit of the court reporter, and not upon the request of either party or the interested attorneys. Section 661 Burns 1908, Acts 1905 p. 45, provides, in substance, that the court may, upon a proper showing, if made prior to the time first given, extend the time for filing a bill of exceptions. It is especially made the duty of the court to extend the time if the failure is due to the inability of the court reporter to prepare and furnish a transcript of the evidence. It is the judgment of this court that the affidavit of the reporter showing his inability to furnish the bill of exceptions within the time fixed in the original order, was sufficient to warrant the court in extending the time, and that no error was committed. The evidence is therefore properly in the record.

There is evidence showing that the crew of the first train knew it was being followed by the second train. Rule 99 of the company which was introduced in evidence reads as follows: "When a train stops or is delayed, under circumstances in which it may be overtaken by

another train, the flagman must go back immediately with stop signals a sufficient distance to insure full protection. When recalled, he may return to his train, first placing two torpedoes on the rail when conditions require it. The front of a train must be protected in the same way when necessary." Rule No. 302 also introduced in evidence reads as follows: "Block signals control the use of the blocks, but, unless otherwise provided, do not affect the movements of trains under the time table or train rules; nor dispense with the use or the observance of other signals whenever and wherever they may be required." It is very earnestly argued by appellant that if Quinn had exercised the precautions prescribed by these rules, the accident and injury would have been avoided; that these rules were applicable to the situation as shown by the evidence in this case, and that Quinn was therefore guilty of negligence which contributed to his injury. The conductor of the train on which Quinn was employed testified to a conversation with him in substance as follows: "I had a conversation with Quinn after we left Greencastle and before we reached Markles. It was at Fontanet, in the caboose. I told him not to forget that we had to leave some coal cars at Forest Mine switch; we were going to stop there in the curve, and not to forget second No. 95 and to flag it. He said: 'Yes, go ahead and look out for the cars, and I will look out for this end of the train.' I did not see him any more until after the accident. I said to him: 'I told you, Shorty, at Fontanet, not to forget second No. 95, when we stopped at Forest Mine.' He did not make any reply that I heard. I had not heard him say anything before that, that I remember of. He talked to others after that." On the other hand, there is no evidence to show that Quinn's train was delayed unusually, or that there were any circumstances suggesting the necessity of placing torpedoes as the rule seems to contemplate, nor is there evidence to show that Quinn or any other member of the crew had any reason to believe that a train would be

permitted to enter the block in violation of the rules, until the first train had departed therefrom. The substance of rule 99 is that the rear brakeman must do whatever is necessary to protect his train properly. A large amount of discretion is thus lodged with him in the discharge of his duty in such cases, as the language of the rule shows, and as the authorities uniformly hold. *Cleveland, etc., R. Co.* v. *Gossett, supra; Sommerset, etc., R. Co.* v. *Galbraith* (1885), 109 Pa. St. 32, 39, 1 Atl. 371; *Denver, etc., R. Co.* v. *Smock* (1897), 23 Colo. 456, 48 Pac. 681; *Veit* v. *Ann Arbor R. Co.* (1907), 150 Mich. 358, 114 N. W. 233; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, 257, 71 N. E. 218, 71 N. E. 660.

If Quinn acted upon this occasion as an ordinarily prudent man would, under all the circumstances, he can not be charged with negligence. The evidence shows that the train had in fact started; that it was the duty of the rear brakeman to be on the rear end of his train when it was starting. It was therefore impossible for him to be off a sufficient distance to flag the second train and obey the general rule that he should be on the rear end of his train when it started. It is argued, under these conditions he should have placed out torpedoes and other signals while his train was engaged in the work at the mine switch. The evidence discloses the train was there only a very short time. Nothing seems to have occurred to cause any member of the crew to believe that there was danger from an approaching train; only the usual and ordinary business was being done. The signalman at the block must have known that sufficient time had not elapsed to enable Quinn's train to perform its work and be outside the block, at least, he knew the train had not passed out because he had received no such notice. The question therefore arises: Did Quinn have a right to rely upon the observance of the rule by the signalman and to feel secure that no train would be permitted to come within

the block until sufficient time had elapsed to permit his train to pass out, and therefore no additional signals were necessary? That is the question which was submitted to the jury upon the evidence. It was properly a question for the jury to determine, taking into account all the facts and circumstances under the evidence in the case. As to whether the negligence of the signalman in failing to warn

8.   the second train was the proximate cause of the injury, or whether the conduct of Quinn was such that he was guilty of contributory negligence, were also questions properly for the jury under proper instructions. In the case of *Milwaukee, etc., R. Co.* v. *Kellogg* (1876), 94 U. S. 469, 24 L. Ed. 256, it is said: "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft cited case of the squib thrown in the market-place. 2 Bl. Rep. 892."

The question as to whether Quinn should have seen or heard the train in time to have avoided the collision was a question of fact for the jury. The evidence shows

9.   that the engine and train upon which Quinn was at work was moving backward and forward with the usual noises accompanying such movements; that the second train approached it at a rapid rate of speed around a sharp curve, with the view obstructed by timber, the air filled with a heavy fog. It is generally a question of fact whether the failure to observe a particular rule is the cause of the particular injury complained of. Buswell, Personal Injuries §153.

Much stress is put upon the conversation said to have

taken pace between the conductor and Quinn, set out above. It is insisted that this evidence being uncontradicted, it should not have been disregarded by the jury in reaching its verdict. We can not agree with appellant's counsel that there was no other evidence on this subject, as all of the circumstances and surroundings were evidence which the jury no doubt properly took into consideration in reaching its verdict. In view of the circumstances, the jury might very well have concluded that the direction, if given to Quinn by the conductor, was not broader than the printed rule, which left to the discretion of Quinn the manner in which the flagging should be done. We believe the jury might very well have concluded from the evidence that Quinn had a right to rely upon the proper operation of the block signal system, and was therefore not required under the ordinary rules of prudence to place out signals or to remain away from his train at the time in question when it was ready and actually starting on its journey westward. *Cotner* v. *State* (1909), 173 Ind. 168, 89 N. E. 847; *Cleveland, etc., R. Co.* v. *Gossett, supra; Veit* v. *Ann Arbor R. Co., supra; Wamsley* v. *Cleveland, etc., R. Co.* (1908), 41 Ind. App. 147, 82 N. E. 490, 83 N. E. 640. Other questions not argued are waived. We find no error in the record. Judgment affirmed.

NOTE.—Reported in 101 N. E. 406. See, also, under (1) 26 Cyc. 1386; (2) 26 Cyc. 1389, (7) 26 Cyc. 1482; (8) 26 Cyc. 1460; (10) 26 Cyc. 1455. As to the question of contributory negligence being one for the jury, see 8 Am. St. 849. As to the liability of a railroad company for injuries received by servants owing to want of blocking at switches, see 16 L. R. A. (N. S.) 715.