COWEN et al. v. RAY.

(Circuit Court of Appeals, Seventh Circuit. April 9, 1901.)

No. 741.

1. RAILROADS—RELIEF DEPARTMENT—RULES—INJURIES—CLAIM—RELEASE—EX-
ECUTION.

Deceased was killed on the defendant railway while on duty as fire-
man, and left a widow and two minor children, and was a member of
the defendant company's relief department, which had a rule that, in
case of the death of a member, the benefits would not be paid until the
parties entitled to sue had executed a release to the company of all
claims for damages. *Held*, that the execution of a release by plaintiff
as the widow and beneficiary of deceased, and an acceptance of a $1,000
benefit therefor, did not bar an action by her as administrator of de-
ceased's estate.

2. SAME—CONTRACT—LAW GOVERNING.

Plaintiff's intestate, who was a fireman on the defendant railway, was
killed while on duty in the state of Indiana. The intestate belonged to
a relief department conducted by the defendant company in Baltimore,
and, by the terms of the contract, it was to be governed by the laws of
Maryland. A rule of the department required that, in case the member
was killed through the company's negligence, the benefit would not be
paid until a release was executed by the parties entitled to sue, reliev-
ing the company from all liability. *Held*, that the question whether a
release executed by plaintiff as the widow and beneficiary of deceased
barred an action by her as administratrix of his estate must be deter-
mined by the laws of Indiana, since it is for the state where the negli-
gent act occurred to prescribe when and under what circumstances a
cause of action resulting therefrom shall arise against a corporation op-
erating within its limits.

3. SAME—BENEFIT CERTIFICATE—ASSIGNMENT—EFFECT.

Deceased, who was killed on the defendant railway, was a member of
a relief department conducted by the company, and pledged his certifi-
cate as security for a loan. *Held*, that the assignment of the certificate
did not discharge a right of action by deceased's widow for his death,
since the right to sue was not assigned.

4. SAME—CONTRIBUTORY NEGLIGENCE—JUMPING FROM TRAIN.

The fact that a fireman jumped from the engine as it was about to
collide with a train was not contributory negligence.

5. SAME—NEGLIGENCE.

Rev. St. Ind. § 7083, provides that every railroad operated in the state
shall be liable for personal injuries suffered by any employé while in its
service, where the injury was caused by the negligence of any person in
the service of the company and in charge of any signal. A freight train
had but eight minutes, by the schedule, to take the side track at a sta-
tion where there was no telegraph office, and, owing to a fog, ran past
the switch. The air brakes refused to unset, and the train was unable
to back so as to take the side track. The rules of the company re-
quired that, when a train stopped on the main track between telegraph
stations, the fireman or brakeman should go forward 1,200 yards and
there place torpedoes, and then still further 500 yards and place torpe-
does, and then return within 1,500 yards and use his red signal until the
arrival of the oncoming train. The brakeman, who was sent forward
six minutes before the coming train was due, placed torpedoes about 700
yards distant, and no red signal was seen by the engineer of the ap-
proaching train, and a collision occurred. *Held*, that the defendant was
guilty of negligence, rendering it liable for the death of the fireman of
the approaching train.

Appeal from the Circuit Court of the United States for the Dis-
trict of Indiana.

J. H. Collins, for appellants.

Frank S. Roby, for appellee.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

The suit below was by the appellee as administratrix of the estate of Robert M. Ray, deceased, against the appellants, to recover damages for the death of Ray occurring on the 26th of April, 1899. The Baltimore & Ohio Railroad Company being in the hands of receivers appointed by the Circuit Court for the District of Indiana, this action was by way of petition in the receivership suit. The court below found in favor of the appellee in the sum of seven thousand five hundred dollars, and ordered the sum paid out of the funds in the hands of the receivers.

Ray was the fireman of the engine drawing passenger train No. 47 west bound, and due at Berlinton station at four o'clock and twenty-two minutes in the morning. Freight train No. 98, east bound, was due at Berlinton eight minutes earlier, and was expected to take the side track. The passenger train was not to stop. Berlinton had no telegraph office. The night was so foggy that lights could be seen only a short distance ahead.

The grade at Berlinton descended toward the east. The east bound freight train arrived on time. Ordinarily an employé would have gone forward and thrown the switch, so that the train would have taken the side track; but, owing to the fog, the engine was run a little way past the switch on the main track before it could be stopped, after the switch light was observed. Thereupon the train was backed until it was clear of the switch, and the switch was thrown; but the air brakes having become set, and for some reason refusing to unset, the train could not be started. The rules of the company required that when a train between telegraph stations had reason to stop upon the main track, so as to cause an obstruction, the fireman, or in case he was engaged, the brakeman, should go forward twelve hundred yards and there place torpedoes; then still further forward five hundred yards and place torpedoes again; and then, returning to within fifteen hundred yards, use his red signal; remaining there until the oncoming train arrived, if it was a passenger train.

The engineer of the east bound freight train, finding that his train, in the situation it was placed, was an obstruction, and having six or seven minutes before the arrival of the west bound passenger train, despatched the brakeman with torpedoes, and two lamps, one a red and the other a white. It is not known precisely what this brakeman did. He disappeared after the accident, and his testimony has not been obtained by either side. It is known, however, that torpedoes were placed at about seven hundred yards distance, but no red signal was seen by the engineer of the west bound passenger train.

In the mean time the east bound freight train was started upon the side track, having proceeded so far before the accident occurred, that the engine and eleven cars were already upon the siding. The headlight of the engine remained unveiled, showing, to those who approached from the eastward, that the freight train had not yet cleared the main track.

The west bound passenger train approached Berlinton at the rate of about thirty miles an hour. When the whistle was blown for Berlinton the engineer was upon the right of the locomotive cab, and Ray upon the left, looking over the boiler. Something was said by the engineer about taking water at Bremen; then an explosion of the torpedoes was heard; and instantly the emergency brakes were set, and the throttle reversed. At about the same instant the flagman was seen on the engineer's side of the track; and then, a moment later, the unveiled headlight of the freight train was passed. The setting of the emergency brakes and the reversal of the engine came too late. The passenger engine struck the freight train, at the switch, and, as a result of the impact, the engine was thrown partly over toward the left, into the ditch; the engineer being thrown to a place between a stationary water tank and the engine, but not sustaining severe injuries. In a few minutes thereafter Ray was found dead—his neck having been broken—about three coach lengths eastward of the rear of the passenger train, and in the neighborhood of the freight locomotive headlight. It is evident, from all the

circumstances, that, in the face of the impending collision, he jumped from the engine.

There is no question made as to the amount of the recovery, should the liability be found to exist. Upon his death Ray left a widow, the administratrix in this case, and two minor children.

As a special defense the answer of the appellants shows that the Baltimore & Ohio Railroad Company was operating a relief department, conducted as a part of the business of the road; its purpose, among other things, being to extend relief in case of sickness, injury, old age and death, to its employes; that among the rules of this department was one to the effect that, in the event of disability, or death from injuries, the benefits should not be payable until there had been filed with the superintendent, by all persons who might bring suit, release from all claims for damages by reason of such injury or death; and that Ray was, at the time of his death, a member of this department, contributing two dollars a month towards its funds, and agreeing to be bound by its rules.

It was averred, also, that in his application Ray agreed that the acceptance of benefits for injury or death, from the department, should operate as a release of all claims against the company which could be made by or through him; that the superintendent might require, as a condition precedent to the payment of such benefits, all acts deemed appropriate to effect such release; that the bringing of any suit by Ray, or his beneficiary, or legal representatives, for such injury or death should operate as a release of the relief department; that the contract thus created should be governed in its construction and effect by the laws of the state of Maryland; and that when the Circuit Court for the District of Indiana appointed appellants as receivers for said railroad all the contracts made by said railroad company, including the one in question, were adopted.

It is further averred in the answer that after the death of Ray the appellee elected to take the benefits provided by the contract with the relief department, and to waive the bringing of any suit for damages, and that thereupon the appellants, through the relief department, agreed to pay appellee "widow and administratrix" the sum of one thousand dollars; that she was furnished for that purpose with a blank release which was signed by her as widow and beneficiary, but not as administratrix of the estate of said Ray; that the release thus executed was returned to her for her signature as administratrix; but that, up to the time of the filing of the answer, the appellants had not again received such release with the signature attached. The answer tendered the said sum of one thousand dollars, and offered to bring the sum into court for her use.

It is further averred in the answer that on September 16th, 1892, Ray and his wife borrowed from the Real Estate and Improvement Company, of Baltimore City, a corporation organized under the laws of the state of Maryland, the sum of two hundred and twenty-five dollars, and as security for said loan assigned, in effect, to the said Real Estate and Improvement Company all their right, title and interest in the benefits of the relief department of the Baltimore & Ohio Railroad Company; and that the said Real Estate and Improvement Company had agreed to accept in full payment of the said loan the benefits due from the said relief department of the Baltimore & Ohio Railroad Company to the beneficiary named.

To this defense a special demurrer was filed, and by the court sustained.

After the foregoing statement of the case, GROSSCUP, Circuit Judge, delivered the opinion of the court, as follows:

The liability in this case is controlled by the following Indiana legislation: Section seven thousand and eighty-three of the Revised Statutes of Indiana, which reads as follows:

"That every railroad or other corporation, except municipal, operating in this state, shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * Fourth: Where such injury was caused by the negligence of any person in the service of

such corporation who has charge of any signal, telegraph office, switch yard, shop, round-house, locomotive engine or train upon a railway, or where such injury was caused by the negligence of any person, co-employe, or fellow servant engaged in the same common service of any of the several departments of the service of such corporation, the said person, co-employe, or fellow-servant, at the time acting in the place, and performing the duty of the corporation in that behalf, and the person so injured obeying or conforming to the order of some superior at the time of such injury, having authority to direct."

Also Section seven thousand and eighty-five (a part of the same Act) which reads as follows:

"The damages recoverable under this act, shall be commensurate with the injury sustained unless death results from such injury; when, in such case, the action shall survive and be governed in all respects by the law now in force as to such actions."

The general law in force was Section two hundred and eighty-five, and provides:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission"; * * * and limits the damages to ten thousand dollars.

Though the answer avers that the appellee elected to take the benefits provided for by the contract with the relief department, and to waive the bringing of any suit for damages, it shows, upon further reading, that the appellee refused, as administratrix, to sign any release. Upon the answer, taken as a whole, it is apparent that, while willing to accept the one thousand dollars, as widow and beneficiary, she declined, as administratrix, to waive the right of action arising under section two hundred and eighty-five of the Revised Statutes of Indiana.

But though it has been ruled by the Supreme Court of Indiana, Railroad Co. v. Hosea, 152 Ind. 412, 53 N. E. 419, that an acceptance of benefits by the beneficiary is not a bar to a recovery by the administratrix for the use of the child of the deceased, under section two hundred and eighty-five, it is insisted that the case now under consideration is to be determined, not by this ruling, but by the law of Maryland; and our attention is called to the fact that, by its own terms, the contract with the relief department is to be governed, in its construction and effect, by the laws of the state of Maryland.

We can not concur in this view. The statute of Indiana, as construed by the Supreme Court of Indiana, gives a right of action to the administratrix for the use of the children, notwithstanding the contract for benefits, or the acceptance of benefits by the appellee, as beneficiary. The statute differentiates her right, as administratrix, from her interest, as beneficiary. As administratrix, she has not consented that her right of action, conferred by the laws of Indiana, shall be governed by the laws of Maryland; and it is for the state within whose limits the negligent act is done to prescribe when, and under what circumstances, a cause of action resulting in death shall arise against a person or corporation operating within its limits.

Nor is the acceptance of benefits by the Real Estate and Improvement Company of Baltimore a discharge of this right of action of the administratrix. The assignment was to secure a loan. Any payment made on account of the relief contract to the extent of the unpaid portion of the loan, could, in a proper way, be claimed by the assignee. But there was no assignment by Ray of his right to sue for injuries resulting from the railroad company's negligence, nor by the administratrix of her right to sue under Section two hundred and eighty-five.

Nor upon the main issue is there, in our opinion, any error in the decree of the Circuit Court. There can be no question that, so far as the record discloses, Ray acted in the exercise of due care and diligence. Jumping from an engine at the moment it is about to collide with another train, under the circumstances disclosed, can not be held to be contributory negligence.

The proof of negligence on the part of the appellants is equally clear. One of two things is apparent: Either the schedule upon which the train ran did not, considering all possibilities, provide sufficient time for the siding of the freight train at Berlinton; or the brakeman, despatched with the torpedoes and signals, negligently failed to comply with the rules. In case of the former, liability could not be disputed. In case of the latter, although the brakeman may be regarded as a fellow servant of Ray, liability exists, if the brakeman falls within the persons enumerated in paragraph four of Section seven thousand and eighty-three of the Revised Statutes of Indiana.

We are of the opinion that the brakeman was, within the meaning of that statute, a person in the service of the appellants, having charge of a signal. The rule of the company, framed to meet the emergency that came into existence, made it the duty of the fireman, or in case he was engaged, the brakeman, to go forward the stipulated distances, place the torpedoes and give the signal. It is not necessary to inquire why the fireman did not go. The engineer, in command over the fireman, unqgestionably determined that he should not go, and despatched instead the brakeman. From that moment, and for that occasion, the brakeman was in charge of the signal. Upon his discretion and fidelity depended the proper giving of the signal. His negligence, therefore, under the statute, was, constructively, the negligence of the appellants.

The decree will be affirmed.