# Cogbill *v.* Louisville & Nashville Railroad Co.

### *Action for Damages for Death of Employe.*

(Decided July 2, 1907. 44 South. 683.)

1. *Master and Servant; Rule of Master; Contributory Negligence of Employe.*—Where the rule of the master, which was known to the employe, prohibited north bound trains from entering upon a single track without orders to do so, or until the engineer and conductor ascertained from the train register that all regularly scheduled south bound trains due to arrive, and not over twelve hours late, had arrived, it was contributory negligence on the part of the engineer, barring the right of his personal representative to recover for his death to proceed northward on the single track in violation of the rule, resulting in a collision and his death.

2. *Same; Duty of Other Employe.*—Where the agency of a railroad operator extended only to the reception and delivery of train orders, it is not his duty to direct the engineer and conductor or to call their attention to any fact disclosed by the train register, and he could presume that they knew they must wait for all regularly

[Cogbill v. Louisville & Nashville Railroad Co.]

scheduled trains southbound not more than twelve hours late, before proceeding, where such was the rule and known to the engineer and conductor.

3. *Same; Employer's Liability Act; Instruction.*—The present employer's liability act as found in the Code of 1896, Sec. 1749, subd. 5, covers cases of negligence of persons having charge of signals generally, the word, "points" refers to apparatus used in giving signals, and not to mere localities.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by Mary Cogbill, administratrix, against the Louisville & Nashville Railroad Company, to recover damages for the death of her intestate caused by a collision of two trains. The facts are sufficiently stated in the opinion of the court. From a judgment for defendant plaintiff appeals. Affirmed.

BOWMAN, HARSH & BEDDOW, for appellant. The court improperly sustained demurrers to counts 9 and 10.— *Mary Lee C. & Ry. Co. v. Chambliss*, 97 Ala. 174; *M. & O. R. R. Co. v. George*, 94 Ala. 199; *Laughran v. Brewer*, 113 Ala. 514; *Bessemer L. & I. Co. v. Campbell*, 121 Ala. 55. The court erred in sustaining demurrer to count 20. —*Bear Creek Mill Co. v. Parsons*, 134 Ala. 293; *L. & N. R. R. Co. v. Marbury*, 125 Ala. 237; *Ensley Ry. Co. v. Chewning*. 93 Ala. 24. Counsel discuss assignments of error relative to the admissions and exclusions of evidence but cite no authority. Some of the counts find support in the tendencies of the evidence and the court improperly gave the affirmative charge.—*Bromley v. B. M. R. R. Co.*. 95 Ala. 405; *Holmes v. Bir. South. Ry. Co.*, 140 Ala. 215; 128 Ala. 539; 136 Ala. 537; 124 Ala. 362; 136 Ala. 191; 124 Ala. 461. If Miss Brooks did as she testified the defendant is liable for her negligence which was the proximate cause of the collision and death even though the court should believe that by his own negligence Cogbill put himself in an attitude of danger.—

*B. R. & E. Co. v. Jackson,* 136 Ala. 286; *South. Ry. Co. v. Shirley,* 128 Ala. 295; *McGhee, et al. v. Wills, Admr.,* 134 Ala. 292; *C. of Ga. Ry. Co. v. Foshee,* 125 Ala. 218; *L. & N. R. R. Co. v. Brown,* 121 Ala. 222; *C. of Ga. Ry. Co. v. Lamb,* 124 Ala. 172; *M. & C. R R. Co. v. Martin,* 30 South. 830.

TILLMAN, GRUBB, BRADLEY & MORROW, for appellee. The word "points," as used in our statutes known as the Employer's Liability Act, has reference to the apparatus used for signals and not to places on the railroad.—2 LeBatt M. & S. p. 2030; *Gibbs v. Great Western R. R. Co.,* L. R. A. 12 Q. B. 208; *Bir. R. & E. Co. v. Allen,* 99 Ala. 359. It follows that the demurrers to the counts were properly sustained. Counsel discuss the evidence at length but cite no authority.

TYSON, C. J.—This is an action by appellant (plaintiff) to recover damages under the employer's liability act for the death of her intestate, who was an engineer in defendant's service, and who was killed in a collision of two freight trains between Boyles and Newcastle on the defendant's road. The complaint contained 20 counts—1 for the conversion of certain personal effects, for which a recovery was had. The other 19 were for damages for the death of the intestate. Three of these counts—9, 10 and 20—were eliminated by demurrer, and as to the others the court gave the affirmative charge in favor of appellee (defendant), on the ground of contributory negligence on the part of the deceased.

The intestate and his conductor were on a freight train, called "Extra 901," running north from Birmingham on a double track as far as Boyles, where it was to take a single track, thence northward to Newcastle. It had the right of way to Boyles, where it arrived. At that

point another train, the first section of No. 15, and called "1st 15," was due to meet and pass it coming south, and had the right of way on the single track to Boyles, but had not arrived. Among the rules of the defendant, with which the intestate and his conductor were familiar, there was one in these words: "No train must leave a junction, a terminal or other starting point, or pass from a double to a single track, until it is ascertained that all trains due, which have the right of track against it, have arrived. * * * And engineers, as well as conductors, must in every case absolutely know that they are entitled to the track before proceeding." If the train due at such a point was over 12 hours late and had not arrived, its right to the track was yielded, and there would be no necessity to wait for its arrival. But in this case the train due to arrive was not 12 hours late. There is no dispute about such being the rules of the defendant, or as to the intestate's familiarity with them. Train extra 901 belonged to a class which had the right of track against no other train. It ran by the rules and in pursuance of express orders from the train dispatcher. It ran from Birmingham to Boyles under the order: "Extra 901 will run extra Birmingham to Hanceville ahead of No. 74, engine unknown." This gave extra 901 the right to move on the double track from Birmingham to Boyles, but on arriving there it could not enter the single track without orders, or until the engineer and conductor ascertained by an inspection of the train register, in which they had to register extra 901's arrival and departure, that all regularly scheduled trains southbound, due to arrive and not more than 12 hours late, had in fact arrived, since all such trains had the right of track against it. Conductors and engineers all had in their possession a time-card showing the time of arrival at all stations, including Boyles, of all regu-

larly scheduled trains; and it was the duty of the conductor and engineer in this instance to compare the timetable in their possession with the train-register and see that all scheduled trains due to arrive at Boyles, and not over 12 hours late, had in fact arrived. The time schedule showed that the first section of No. 15 was due to arrive at Boyles at 7:15 a. m., and the register showed that it had not arrived at 10:20 a. m., when extra 901 registered its arrival. No. 1st 15, therefore, not being 12 hours late, had the right of way on the single track northward from Boyles against intestate's train, of all of which intestate had notice. It was, therefore, contributory negligence for the engineer to proceed with his train on the single track north of Boyles. As the unfortunate collision causing appellant's intestate's death, and for which this suit is brought, resulted directly from this negligent act, there can be no recovery unless it is shown that the defendant in some way caused extra 901 to proceed northward on the single track from Boyles before the arrival of the first section of No. 15.

Extra 901 had only two orders—one, the right to run as an extra to Hanceville, without, however, any rights of track against opposing trains. Under this it would have to run by the time-card and register, seeing that all due trains had arrived before entering on the single track at Boyles. The other order was in these words: "No. 21, 2d 15, and No. 19, engine unknown, and extra 901 north will meet at Hanceville 'south Y.' Run ahead of third-class trains." This order gave extra 901 the right of track to Hanceville against train 21, train 2d 15, and train 19 coming south, but it gave no right against 1st 15, which it was to meet at Boyles. "South Y" was a track at Hanceville. The direction, "run ahead of third-class trains" meant to pass around such trains at sidings going in the same direction. This or-

der made it the duty of those in charge of extra 901 at Boyles to pass around 2d 12, a double-header third-class freight then at that point going north, and it proceeded to do so; but it gave no right, or intimation of right, to take the single track thence to Newcastle against train 1st 15, which had not yet arrived at Boyles. The train dispatcher had thought, on account of the lightness of train extra 901, of giving it the track to Newcastle, and with the view of so doing had held 1st 15 at Newcastle a few minutes until he could find out whether extra 901 could pass around 2d 12 at Boyles; and through the operator at Boyles he asked those in charge of extra 901 if they could get by 2d 12. They replied they could not then get around it. This determined the train dispatcher at Birmingham not to alter the running orders, and so he directed 1st 15 to proceed on its right of track south, and gave no orders to extra 901. The latter train, therefore, was bound to wait at Boyles for the arrival of train 1st 15. This, however, it did not do, but, having got around train 2d 12, proceeded towards Newcastle, and caused the collision which resulted in appellant's intestate's death, precluding any recovery against defendant therefor.

The undisputed proof puts no blame whatever on defendant, or any of its agents. The agency of the operator at Boyles only extended to the reception and delivery of orders. It was not the business of such operator to direct those in charge of train extra 901, or call their attention to any fact disclosed to them by the train register, as that train 1st 15 had not arrived. The operator had a perfect right to suppose that the engineer and conductor knew that they had to wait for the arrival of train 1st 15, and that they would do so; nor did the operator know or suspect that they had neglected to do so until they had proceeded on their route beyond recall

or possibility of warning. It is, therefore, a plain case of misfortune to the appellant's intestate, resulting from his own negligence. There was no error in the lower court in giving the affirmative charge for the defense as to all the counts, except that on which a recovery was had. This leaves for us only two questions open for consideration: First, the rulings upon evidence; and, second, the sustaining of demurrers to three counts.

As to the rulings upon the admission and exclusion of evidence there is no error available to the appellant. In a number of instances the questions to which objection was sustained were then or afterwards fully answered, or the questions were modified and answered at the time; and, beyond this, all the assignments of error on this head related to the question of negligence vel non of the operator at Boyles in not holding extra 901 until the arrival of 1st 15, or in not warning those in charge of it against departure before 1st 15's arrival. The fullest proof of facts on this head sought to be brought out could not have helped the appellant's case. It would not have removed the fact of negligence on the part of the deceased, nor would it have shown any official duty on the part of the operator to order or to advise the intestate; and, beyond all this, the undisputed proof shows that the operator had no reason whatever to suppose that extra 901 was going to proceed towards Newcastle until it had gone. It is unnecessary, therefore, to consider in detail the rulings of the court on the admissios and exclusion of proof.

Demurrers were sustained to counts 9, 10, and 20. These counts charged that the person guilty of negligence was "in charge or control of a point on said railway," without stating or defining what sort of point was intended. The demurrer was that the counts failed in this regard. This brings up the construction of the fifth

clause of section 1749 of the Code, on the question whether "signal, points," in the clause, is to be read as one word, making signal qualify points, or read sep arately, as punctuated. The part of this section brought under discussion is a literal copy of the English statute, which uses the words "signal points." In our first stat ute the word "signal" was used without "points." Acts 1884-85, p. 116. We subsequently inserted "points" after "signal," separating them by a comma. Our stat utes also use the word "signal" in this connection without points, and such statutes are construed to cover the act of placing or making signals.—*Cowen v. Ray,* 108 Fed. 320, 47 C. C. A. 352. A similar construction would necessarily have been put on our original act; otherwise, it would have been meaningless. The question is what, if any, effect did, or does, the insertion of "points" have on "signal," or have on the meaning of the statute? It will be noticed that "points" is in the plural form, as it is in the English statute. It is impossible, because un reasonable, to suppose that there was a purpose in the Legislature to limit liability to cases in which the negli gent person had charge or control of more than one "sig nal point," or more than one "point," on a railroad.

The damage to be redressed is always from negligence at the point of its occurrence, and the superintendence or control at the locality alone would seem to be in the purview of a statute intending to give a remedy. The explanation is this: In England, when the employer's liability act was passed, there was a complicated appar atus for giving or making signals, called "points," op erated by a person in the "signal box."—*Gibbs v. Great Western Ry. Co.,* L. R. 11 Q. B. Div. 22; Id., L. R. 12 Q. B. Div. 208. Now, in framing our statutes, "points" was likely omitted as being an unknown and unusued

11 R

apparatus in this state, but was afterwards inserted to cover negligence in reference to its use. We therefore hold that, while clause 5 of section 1749 of the Code of 1896 may cover cases of negligence of persons having charge or control of signals generally, the word "points" therein has strict reference to a mechanical apparatus, designated as "points," used for the giving of signals. If the pleader in this case, in his counts 9, 10 and 20, had intended to refer to negligence in the control of a signal apparatus, in conformity to the statute, he should have used language which necessarily conveyed that meaning. . Instead of showing this meaning by the use of the single word "points," or the double word "signal points," or a circumlocution which would leave his meaning unmistakable, he used the words "who had the charge or control of a point on said railway," which might merely designate locality wholly unconnected with signals or "points," or "the track of (the) railway," and as to which the statute has nothing to do. We think, therefore, that the demurrers were properly sustained to the three counts in question.

The judgment of the lower court is affirmed.

HARALSON, SIMPSON and DENSON, JJ., concur.