# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

---

### KNOXVILLE, SEPTEMBER TERM, 1915.

---

### (*Continued from Vol. 132.*)

---

JOSEPH SHARP *v.* CINCINNATI, N. O. & T. P. RY. Co.*

### (*Knoxville.* September Term, 1915.)

1. **EXECUTORS AND ADMINISTRATORS.** Jurisdiction to appoint. Existence of "as sets." "Chattel." "Goods and chattels." "Estate." "Goods, chattels, or assets or any estate, real or personal." "Chose in action."

Under Shannon's Code, sec. 3935, providing that letters of administration may be granted upon the estate of a nonresident by the county court of any county where deceased had any goods, chattels, or assets or any estate, real or personal, at the time of his death, or where the same may be when the letters are applied for, or where any suit is to be brought, prosecuted, or defended in which the estate is interested, an administrator may be appointed in the county in which the decedent was

---

*As to what assets will give jurisdiction to appoint administrator see notes in 24 L. R. A., 684, L. R. A., 1915D, 856.

As to what law determines the right of action for death see note in 56 L. R. A., 195.

wrongfully killed, though the cause of action for the wrongful death is the only asset in the county, and there are no technical assets. Since the word "chattels" includes not only personal property in possession, but choses in action, the term "goods and chattels" is of very wide signification, and includes choses in action. The term "choses in action" includes rights of action for tort. The word "assets," as used in the administration statutes, though usually meaning items subject to payment of the debts of the decedent, is not wholly limited to this meaning, but has been applied to money collected by an administrator as damages for the wrongful killing of an intestate. The word "estate," though in its primary and technical sense referring only to an interest in land, as used with reference to a decedent's property, has acquired a wider application in a popular sense and refers to the entire mass of decedent's property, both real and personal, while the words "goods, chattels, or assets or any estate, real or personal," include every kind of property of any nature whatsoever, and are not limited to technical assets subject to the payment of debts. (*Post, pp.* 5-9.)

Cases cited and approved: Pitts v. Curtis, 4 Ala., 350; McKee v. Judd, 12 N. Y., 622; Agee v. Saunders, 127 Tenn., 680; Thornton v. Mulguinne, 12 Iowa, 549; Bridgewater v. Bolton, 6 Mod., 106; O'Neil v. Carey, 8 U. C. & C. P., 339; Harrison v. Lamar, 33 Ark., 824.

Cases cited and distinguished: Glass v. Howell, 70 Tenn., 50; Gourley v. Thompson, 34 Tenn., 387.

Code cited and construed: Sec. 3935 (S.).

2. **EXECUTORS AND ADMINISTRATORS.** Jurisdiction· to appoint. Statutory provisions. "Estate."

The word "estate," as used in Shannon's Code, sec. 3935, subd. 4, authorizing the appointment of an administrator of the estate of a nonresident in any county where any suit is to be brought, prosecuted, or defended in which the estate is interested, means the whole legal entity which may be the subject of devolution on the legatees, devisees, heirs, or distributees of a decedent, under the laws of a State or government, which, under such

Sharp v. C., N. O. & T. P. Ry. Co.

laws, may be attacked or defended, or to obtain which, a suit may be brought. (*Post, p.* 9.)

3. DEATH. Actions for cause of death. Nature.

The right of action for wrongful death given by Shannon's Code, sec. 4025 *et seq.,* is that which the deceased would have had if he had lived, and the recovery is in right of the deceased. (*Post, pp.* 9, 10.)

Cases cited and approved: Davidson Benedict Co. v. Severson, 109 Tenn., 572; Stuber v. Railroad, 113 Tenn., 305.

4. DEATH. Actions for wrongful death. Law governing.

A right of action for wrongful death is governed by the laws of the State where the injury occurred. (*Post, pp.* 10-16.)

Acts cited and construed: Acts 1871, ch. 78, sec. 2; Acts 1903, ch. 317.

Cases cited and approved: Nashville & Chattanooga R. R. Co. v. Eakin, 46 Tenn., 582; Nashville & Chattanooga R. R. Co. v. Sprayberry, 56 Tenn., 852; Id., 67 Tenn., 341; Hobbs v. Memphis & Charleston R. R. Co., 56 Tenn., 873; Railroad v. Foster, 78 Tenn., 351; Whitlow v. N. C. & St. L. Ry. Co., 114 Tenn., 344; Erickson v. Pacific Coast S. S. Co. (C. C.), 96 Fed., 80; Owen v. Ray, 108 Fed., 320; Van Doren v. Pa. R. R. Co., 93 Fed., 260; Leman v. Baltimore & O. R. R. Co. (C. C.), 128 Fed., 191; Davidow v. Pa. R. R. Co. (C. C.), 85 Fed., 943; In re Coe's Estate, 130 Iowa, 307; Louisville & Nashville R. R. Co. v. Whitlow's Adm'r, 105 Ky., 1; Id., 114 Ky., 470; C., O. & S. W. R. R. Co. v. Higgins, 85 Tenn., 620; Bledsoe v. Stokes, 60 Tenn., 312; Flatley v. M. & C. R. R. Co., 56 Tenn., 230; Trafford v. Adams Express Co., 76 Tenn., 96; Loague v. Railroad, 91 Tenn., 458-460; Holston v. Coal & Iron Co., 95 Tenn., 521; Anderson v. Louisville & N. R. Co., 128 Tenn., 244; Railroad v. Herb, 125 Tenn., 408.

Code cited and construed: Secs. 2291-2293 (1858); Sec. 4027 (S.).

5. STATUTES. Revisions and compilations. Construction.

Though the substance of Shannon's Code, sec. 3935, relative to the jurisdiction to appoint administrators of the estates of

nonresidents was enacted prior to the Code of 1858, with which the right of action for wrongful death originated, it having been made a part of that Code along with the sections giving the right of action for wrongful death, they must be construed together as if they had originated with the Code, as that Code was a single enactment. (*Post, pp.* 16-18.)

Acts cited and construed: Acts 1831, ch. 24; Acts 1841-42, ch. 69.

Cases cited and approved: Chapman v. State, 39 Tenn., 36; Brien v. Robinson, 102 Tenn., 157; State v. Runnels, 92 Tenn., 320; Trust Co. v. Weaver, 102 Tenn., 66; Padgett v. Ducktown, etc., Iron Co., 97 Tenn., 690.

Cases cited and distinguished: Whitworth v. Hager, 124 Tenn., 355.

Code cited and construed: Sec. 3935 (S.); sec. 2203 (1858).

---

## FROM SCOTT

---

Appeal from the Criminal and Law Court of Scott County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —XEN. HICKS, Judge.

E. G. FOSTER and PICKLE, TURNER & KENNERLY, for plaintiff.

H. M. CARR, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case was originally brought in the county court of Scott county to revoke the letters of administration previously granted to petitioner Joseph Sharp, as ad-

ministrator of Charles B. Wilson.  A judgment was granted in the county court revoking the letters, and on appeal to the circuit court this judgment was affirmed, and subsequently on appeal to the court of civil appeals was there again affirmed.  The case has now reached us in regular course under the writ of *certiorari.*

The ground of recall in the several courts was that the decedent was a nonresident of this State, and had no assets in Scott county, and the county court was therefore without jurisdiction to grant letters of administration upon his estate.

Wilson was killed in Scott county, Tennessee, in an accident on the line of the defendant railway company, alleged to have been due to the negligence of the railway company.  The railway company is a corporation of the State of Ohio.  It is alleged that deceased was a citizen of the State of Kentucky.  He left no assets or property in Scott county except the cause of action arising from his alleged wrongful death.  The action of the court of civil appeals in revoking the letters is assigned as error.

The question is whether a county court of this State has jurisdiction to appoint an administrator for the estate of a nonresident who died as the result of an injury which was tortiously inflicted upon him in the county in which administration is sought, where it appears the decedent left no other property or estate in that county, except the right of action for the wrongful death.

The solution of this question depends upon the construction of section 3935 of Shannon's Code (Code of 1858, sec. 2203), which reads as follows:

"Letters testamentary or of administration may be granted upon the estate of a person who resided, at the time of his death, in some other State or territory of the Union, or in a foreign country, by the county court of any county in this State:

"(1) Where the deceased had any goods, chattels, or assets, or any estate, real or personal, at the time of his death, or where the same may be when said letters are applied for.

"(2) Where any debtor of the deceased resides.

"(3) Where any debtor of a debtor of the deceased resides, his debt being unpaid when the application is made.

"(4) Where any suit is to be brought, prosecuted, or defended, in which said estate is interested."

The word "chattels," used in the first subsection, includes not only personal property in possession, but choses in action. Cyc. Law Dict.

In Cyc. the word "chattels" is thus defined:

"Every species of property, movable or immovable, which is less than a freehold." Volume 7, p. 122.

So of the term "goods and chattels." This expression is of very wide signification, and, among many other things, includes choses in action as well as those in possession. 20 Cyc. 1268-1270. The term "choses in action" includes rights of action for tort. Cyclo-

pedic Law Dict. 149; *Pitts* v. *Curtis,* 4 Ala., 350; *Mc-Kee* v. *Judd,* 12 N. Y., 622, 64 Am. Dec., 515.

The words "assets," as used in our administration statutes, usually means items subject to payment of the debts of the decedent. *Agee* v. *Saunders,* 127 Tenn., 680, 157 S. W., 64, 46 L. R. A. (N. S.), 788. Still it is not wholly limited to this meaning, but has been applied to money collected by an administrator as damages for the wrongful killing of an intestate, since the administrator owes a duty to distributees as well as to creditors. This court said on the subject, in *Glass* v. *Howell,* 70 Tenn. (2 Lea), 50, 52:

"It is argued that the right of action for damages resulting in the death of an intestate is not assets with which an administrator is officially chargeable. But this is directly in conflict with the statute which expressly provides that the right of action for injuries resulting in death shall survive and pass to the personal representative. Code, sec. 2291. It is true he may decline to sue, in which case the next of kin may use his name by giving security for costs. Code, sec. 2292. The reason is that there may be no assets with which to pay costs, and the personal representative may decline to actively proceed without security, and as, by the statute, the recovery inured to the next of kin, free from the claims of creditors, the next of kin were authorized to sue in his name, upon indemnifying him against costs. If he acted, and received the fund, it would undoubtedly be as administrator."

Furthermore, there are many estates which owe no debts, and still it is proper to have an administrator to take charge of all of the personal property, realize on it, and divide the proceeds among the distributees.

Of the word "estate" it is said:

"While in its primary and technical sense the term estate refers only to an interest in land, yet by common usage it has acquired a much wider import and application, being applied to personal property as well as realty, and in its most extreme sense signifying everything of which riches or fortune may consist." 16 Cyc. 599, 600.

In the notes to the text it is said:

"The word 'estate' is *genus generalissimum* and includes all things real and personal. *Thornton* v. *Mulquinne,* 12 Iowa, 549, 79 Am. Dec., 548; *Bridgewater* v. *Bolton,* 6 Mod., 106; 1 Salk., 236; *O'Neil* v. *Carey,* 8 U. C. & C. P., 339."

The word "estate," as used with reference to a decedent's property, has acquired a wider application in a popular sense and refers to the entire mass of the decedent's property, both real and personal. *Harrison* v. *Lamar,* 33 Ark., 824.

Finally, in our own case of *Gourley* v. *Thompson,* 34 Tenn. (2 Sneed), 387, 393, it is said:

"The word 'estate,' unqualified or unrestricted, is always construed to embrace every description of property, real, personal, and mixed."

Taking together all the words referred to as used in subsection 1, viz., "goods, chattels, or assets, or any

estate real or personal,'' we think it was the intention of the legislature to include every kind of property of any nature whatsoever and that they cannot be limited merely to technical assets subject to the payment of debts.

Subsection 4, as if to remove any ambiguity that might reside in the very extensive expressions already referred to, specifies that administration may be had in any county where any suit is to be brought, prosecuted, or defended in which ''said estate'' is interested. By the word ''estate,'' as used in this latter subsection, is meant the whole legal entity which may be the subject of devolution on the legatees, devisees, heirs, or distributees of a decedent under the operation of the laws of a State or government, and which, under such laws, may be attacked or defended, through forms prescribed by law, or to obtain which a suit may be brought.

We think there is no doubt that the right of action which arose in the present case to the estate of Wilson by reason of his wrongful death was a part of his estate, and that an administrator could be properly appointed in Scott county, where he was killed, to recover therefor. It has been abundantly held in this State that the right of action under the Code sections referred to is that which the deceased would have possessed if he had lived, and the recovery is in right of the deceased. *Davidson Benedict Co.* v. *Severson,* 109 Tenn., 572, 613-623, 72 S. W., 967, inclusive, and cases

cited; *Stuber* v. *Railroad,* 113 Tenn., 305, 87 S. W., 411.

The injury having occurred in this State, the right of action would be governed by the laws of this State. The universal rule is that this right of action is governed by the laws of the State where the injury occurred. *Nashville & Chattanooga R. R. Co.* v. *Eakin,* 46 Tenn. (6 Cold.), 582; *Nashville & Chattanooga R. R. Co.* v. *Sprayberry,* 56 Tenn. (9 Heisk.), 852, 856; *Id.,* 67 Tenn. (8 Baxt.), 341, 35 Am. Rep., 705; *Hobbs* v. *Memphis & Charleston R. R. Co.,* 56 Tenn. (9 Heisk.), 873; *Railroad* v. *Foster,* 78 Tenn. (10 Lea), 351; *Whitlow* v. *N. C. & St. L. Ry. Co.,* 114 Tenn. (6 Cates), 344, 84 S. W., 618, 68 L. R. A., 503; *Erickson* v. *Pacific Coast S. S. Co.* (C. C.), 96 Fed., 80; *Cowen* v. *Ray,* 108 Fed., 320, 47 C. C. A., 352; *Van Doren* v. *Pa. R. R. Co.,* 93 Fed., 260, 35 C. C. A., 282; *Leman* v. *Baltimore & O. R. R. Co.* (C. C.), 128 Fed., 191; *Davidow* v. *Pa. R. R. Co.* (C. C.), 85 Fed., 943; *In re Coe's Estate,* 130 Iowa, 307, 106 N. W., 743, 4 L. R. A. (N. S.), 814, 114 Am. St. Rep., 416, 8 Ann. Cas., 148; *Louisville & Nashville R. R. Co.* v. *Whitlow's Adm'r,* 105 Ky., 1, 43 S. W., 711, 41 L. R. A., 614; *Id.,* 114 Ky., 470, 43 S. W., 711, 41 L. R. A., 614.

If not permitted to be sued on in this State, it probably could not be made the subject of an action anywhere, because each State enforces such rights of action accruing in any other State only through comity, and when the State in which the injury occurred does not recognize it as giving a right of action, there is

nothing on which comity could rest. We should then have the singular result that the estate of no human being killed in this State by wrongful act, if the person was a nonresident at the time he was killed, could enforce a right of action against the wrongdoer anywhere unless the deceased left in this State some property other than the right of action for this wrongful death. This would create an exception to our statute allowing recoveries for death caused by wrongful act not warranted by anything in the statute itself; the statute being general in its terms.

That statute reads as follows:

"4025. The right of action which a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children or to his personal representative, for the benefit of his widow or next of kin, free from the claims of creditors.

"4026. The action may be instituted by the personal representative of the deceased; but if he decline it, the widow and children of the deceased may, without the consent of the representative, use his name in bringing and prosecuting the suit, or giving bond and security for costs, or in the form prescribed for paupers. The personal representative shall not, in such case, be responsible for costs, unless he sign his name to the prosecution bond.

"4027. The action may also be instituted by the widow in her own name, or, if there be no widow, by the children.

"4028. If the deceased had commenced an action before his death, it shall proceed without a revivor. The damages shall go to the widow and next of kin, free from the claims of the creditors of the deceased, to be distributed as personal property."

The provisions of the Code of 1858 on the subject were these:

"2291. The right of action, which a person who dies from injuries received from another, or whose death is caused by the wrongful act or omission of another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death; but shall pass to his personal representative for the benefit of his widow and next of kin, free from the claims of his creditors.

"2292. The action may be instituted by the personal representative of the deceased; but if he decline it, the widow and children of the deceased may, without the consent of the representative, use his name in bringing and prosecuting the suit, on giving bond and security for costs, or in the form prescribed for paupers. The personal representative shall not in such case be responsible for costs, unless he sign his name to the prosecution bond.

"2293. If the deceased had commenced an action before his death, it shall proceed without a revivor. The damages shall go to the widow and next of kin,

free from the claims of the creditors of the deceased, to be distributed as personal property."

In 1903 an act was passed (chapter 317) which provided:

"That no suit now pending or hereafter brought for personal injuries or death from wrongful act in any of the courts of this State, whether by appeal or otherwise, and whether in an inferior or superior court, shall abate or be abated, because or on account of the death of the beneficiary or beneficiaries for whose use and benefit said suit was brought, and that such suit shall be proceeded with to final judgment, as though such beneficiary or beneficiaries had not died, for the use and benefit of the heirs at law of such deceased beneficiary."

It is perceived that the right of action given is general, for the benefit of the widow, children, and next of kin, without respect to whether residents or nonresidents. Accordingly it has been held that a widow residing in a foreign State might bring her suit in this State to recover for the death of her husband wrongfully caused here. *Chesapeake, Ohio & Southwestern Railroad Co.* v. *Higgins*, 85 Tenn. (1 Pick.), 620, 4 S. W., 47. But the right of the widow and children to sue directly was first conferred by Acts 1871, ch. 78, sec. 2, embodied in Shannon's Code, sec. 4027. Prior to that time, under the sections of the Code of 1858 quoted, the action could be brought only by the administrator. *Bledsoe* v. *Stokes*, 60 Tenn. (1 Baxt.), 312, 314; *Flatley* v. *Memphis & Charleston Railroad Co.*,

56 Tenn. (9 Heisk.), 230, 233, 234; *Trafford* v. *Adams Express Co.,* 76 Tenn. (8 Lea.), 96, 99; *Loague* v. *Railroad,* 91 Tenn. (7 Pick.), 458-460, 19 S. W., 430; *Holston* v. *Coal & Iron Co.,* 95 Tenn. (11 Pick.), 521, 522, *et seq.,* 32 S. W., 486. If plaintiff's contention be sound, then it must follow that prior to the act of 1871 there could be no recovery at all for the wrongful killing of a nonresident in this State, unless, as appeared in *Anderson* v. *Louisville & N. R. Co.,* 128 Tenn., 244, 159 S. W., 1086, there was found on his body, or otherwise in some county of this State, some personal property, even though small and comparatively inconsiderable, so that an administrator could be appointed. It would likewise follow, on the same theory, that after the act of 1871, a foreign widow and children could sue for the injury, but in case there were neither widow nor children, but other next of kin, these latter could have no remedy, because they could not sue without an administrator, and none could be appointed here, because no technical assets could be found here; that is, no property subject to debts. We should thus have imported into the statute, by construction, the new and important condition that, while the widow and children might recover regardless of the existence of technical assets in this State, there could be no recovery for the benefit of the next of kin other than children, unless there could be found in this State at least a few dollars' worth of property liable for debts. A theory leading to such a result cannot be sound.

The error resides in the assumption that no administrator can be appointed here unless there be technical assets. This theory ignores the fact that the duty of taking possession of property, realizing on it, and paying to distributees rests on the administrator as well as the payment of debts, and that this duty exists even though there be no debts. It fails to accord the proper meaning to the broad terms "goods" and chattels," and improperly confines the term "estate" to assets subject to the payment of debts. As we have already shown, the term "assets" has a broader meaning under the statute we are considering.

We are referred to the case of *Railroad* v. *Herb,* 125 Tenn., 408, 143 S. W., 1138, as in conflict with what we have herein held. That case, so far as concerns the facts in decision, is not in conflict, since it appears that the injury which was the subject of that action occurred in Kentucky. However, the construction therein given to Shannon's Code, sec. 3935, is in conflict with the construction herein given, and we cannot adhere to it. We may add that *Railroad* v. *Herb,* is in conflict with two prior decisions of this court concerning the right of action for injuries resulting in death where the injuries occurred in a foreign State. *Railroad* v. *Foster,* supra, and *Whitlow* v. *Railroad,* supra. These cases are not referred to in *Railroad* v. *Herb.* In the case of *Railroad* v. *Foster* the action was brought by the administrator. It does not appear from the opinions in the cases where these administrators were appointed, but they must have been appointed in some

county in Tennessee, since, under the rule well estab-
lished at the time in this State, a foreign administra-
tor was not permitted to sue. It does not distinctly
appear in the *Whitlow Case* whether plaintiff was the
administrator, but it is to be inferred from the Ala-
bama statute quoted in the opinion that such was the
case. In the *Sprayberry Case,* supra, suit was brought
by a husband and father for the wrongful death of his
wife and children, occurring in the State of Missis-
sippi.

The three cases last referred to are in harmony with
the great weight of authority elsewhere. The cases
are so numerous that we shall not attempt to cite them.
The rule is practically uniform in the States of the
Union that suits will be entertained on rights of action
for wrongful injuries causing death occurring in for-
eign States unless the statutes of the foreign States
are penal in their nature, or contain provisions in
conflict with the public policy of the State in which
they are sought to be enforced. In some of the States
the foreign administrator is permitted to sue, but gen-
erally an administrator is appointed in the State of the
forum, as has always been the practice in Tennessee.

It is suggested that Shan. Code, sec. 3935 (Code of
1858, sec. 2203), copied supra, was taken from Acts
1831, ch. 24, and Acts 1841-42, ch. 69, and at that time
the right of action for personal injuries resulting in
death died with the injured party, and therefore they
could not have been intended to cover a cause of action
such as that sued on in the case before us, originating

with the Code of 1858, and that for this reason such a claim could not be treated as assets. The argument is not sound. It is true the substance of the section was in the original acts referred to, but this section was made a part of the Code of 1858, along with the sections giving the right of action for wrongful death, and therefore they must be construed together, just as if they originated with the Code. The whole Code of 1858 was itself a single enactment, and went into effect as a whole on the 1st day of May, 1858. The title and enacting clause are as follows:

"An act to revise the statutes of the State of Tennessee.

"Be it enacted by the general assembly of the State of Tennessee, that the general statutes of the State of Tennessee shall be as follows."

Then follows the whole Code as one act or body of laws. *Chapman* v. *State*, 2 Head (39 Tenn.), 36, 41; *Brien* v. *Robinson*, 102 Tenn., 157, 167, 52 S. W., 802; *State* v. *Runnels*, 92 Tenn., 320, 323, 324, 21 S. W., 665; *Trust Co.* v. *Weaver*, 102 Tenn., 66, 69, 50 S. W., 763; *Whitworth* v. *Hager*, 124 Tenn., 355, 360, 140 S. W., 205.

"While the court will presume, in doubtful cases, that it was not the intention of the compilers of the Code to change, but only to revise or compile, the old statutes, still, where the meaning of the Code is clear, by reason of its express terms, or as a matter of necessary implication, its provisions are the law of the State, without regard to the old statutes which may have

133 Tenn. 2

been the basis of its provisions, and which it in express terms repeals." *Padgett* v. *Ducktown, etc., Iron Co.*, 97 Tenn., 690, 694, 695, 37 S. W., 698.

The result is the judgment of the court of civil appeals is reversed.