## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* HOSEA, ADMINISTRATRIX.

[No. 17,843. Filed April 7, 1899.]

CONSTITUTIONAL LAW.—*Railroads.*—*Employers' Liability Act.*—The act of March 4, 1893, sections 7083-7087 Burns 1894, known as the Employers' Liability Act, making railroads and other corporations, except municipal corporations, liable for injuries to employes resulting from negligence of co-employes, and prohibiting such corporations from entering into contracts with employes releasing them from liability to any employe having a right of action under the provisions of said act is constitutional. *p. 416.*

RAILROADS.—*Master and Servant.*—*Employers' Liability Act.*—*Release.*—*Voluntary Relief Association.*—*Election of Remedies.*—A contract entered into with a railway voluntary relief association by an employe of a railroad company agreeing that the acceptance of benefits from such association for injury or death should operate as a release of all claims for damages against the railroad company arising from such injury or death, is not a release within the meaning of section 5 of the act of 1893, known as the Employers' Liability Act, section 7087 Burns 1894, prohibiting corporations from entering into contracts with employes releasing them from liability to any employe having a right of action under the provisions of said act, but is nothing more than a choice between two sources of compensation. *p. 416.*

ACTION.—*Personal Injuries. — Death by Wrongful Act. — Personal Representatives.*—Section 285 Burns 1894 creates a new and independent right of action in favor of the personal representatives of a person whose death was caused by the wrongful act of another, and does not confer on the personal representatives the same right or cause of action that would have vested in the deceased in his lifetime for the same act or omission. *pp. 417-420.*

RAILROADS.—*Master and Servant.*—*Voluntary Relief Association.*—*Contract.*—*Release.*—Where a railroad employe entered into a con-

tract with the relief department of the company to the effect that the acceptance of benefits from such department for injury or death should operate as a release of all claims against the railroad company arising from such injury or death, the acceptance of benefits from the relief department by his widow, who was the sole beneficiary named in the contract, will not bar a recovery for the wrongful death of decedent for the use of his child. *pp. 420, 421.*

From the Clark Circuit Court.   *Affirmed.*

*S. Stansifer,* for appellant.

*Laurent A. Douglass* and *C. B. Harrod,* for appellee:

HADLEY, J.—This action is for the death of appellee's decedent, who was a resident of this State, and who died in the city of Louisville, Kentucky, of injuries there received in coupling cars while in the service of appellant as a switchman, and leaving surviving him appellee, his widow, and one child.

The complaint, pleading the Kentucky statute, commonly known as "Lord Campbell's Act," and which in all material respects is similar to ours upon the same subject, is in two paragraphs. Each paragraph rests upon section 1 of the act of 1893, approved March 4, 1893 (Acts 1893, p. 294), section 7083 Burns 1894. The first paragraph of the complaint charges that the injury was caused by and because of the negligent violation by the engineer of a rule of the company for his guidance. The second paragraph charges the same things as to the engineer and fireman.

Demurrers to each paragraph of the complaint were overruled. Answer in three paragraphs,—the first a general denial; the second a special plea in bar; and the third, the same as the second, pleaded as a partial defense in bar of the widow's right of recovery. A demurrer to the second paragraph was sustained. Trial on denial and partial answer, and judgment for plaintiff for $2,350 for benefit of child.

The errors assigned call in question the action of the court in overruling the demurrer to each paragraph of the com-

plaint, and in sustaining the demurrer to the second paragraph of answer.

The second paragraph of answer sets up the following facts: Appellant and other companies operating lines west of Pittsburgh, under the same general management, organized a "voluntary relief department" for the benefit of such employes as might see fit to become members; relief in stipulated amount to be extended to members when disabled, while in the service, from sickness, accident, personal fault, or any other cause, and, in case of death, a gross sum to beneficiary named by member in his application. The relief fund is made up of contractual contributions by the members, retained out of their monthly wages, and interest from investments of the funds. The associated companies will take general charge of the department, guarantee the fulfilment of obligations assumed, supply the necessary facilities for conducting the business of the department, and pay all the operating expenses thereof, will take charge of the fund, and be responsible for its safe-keeping; each of the associated companies obligating itself to contribute its share of expense in the administration of the relief department free of any charge or cost to the relief fund or to the members thereof, including medical and surgical assistance to members in certain cases, salaries and expenses of any character, and guaranteeing that the benefits stipulated for with its own employe members, whether for disability or death, shall be paid in full. The stipulated disability and death benefits are based on amount of monthly contribution by each member. By the rules and regulations it is provided that an employe desiring to become a member must make written application, as per form in the rules and regulations, to the superintendent of the relief department, stating the kind or kinds of relief, the amount to be donated, naming his death beneficiary, making the rules and regulations a part of the application and contract with his employer company, if accepted by the superintendent; the application to contain, among others, the follow-

ing stipulation: "And I agree that the acceptance of benefits from said relief fund for injury or death shall operate as a release of all claims for damages against said company, arising from such injury or death, which could be made by or through me, and that I or my legal representatives will execute such written instrument as may be necessary, formally, to evidence such acquittance." And the regulations accepted and made part of the application contain the following: "Should a member or his representative bring suit against either of the associated companies for damages on account of injury or death of such member, payment of benefits from the relief fund on account of the same shall not be made until such suit is discontinued. If prosecuted to judgment or compromise, any payment of judgment, or amount in compromise, shall preclude any claim upon the relief fund for such injury or death."

On the 9th day of August, 1892, the said Charles Hosea, an employe of appellant company, made application to said superintendent (copy with the answer), as required, and containing the foregoing stipulations, naming the amount to be donated each month, and designating his wife, the said Nora Hosea, his death beneficiary. On the 1st day of September, 1892, the application was accepted by the superintendent, and the deceased duly notified, and until his death the deceased continued in the service of said company and membership, making his donations to said fund as in the application, until his injury and death, and, there being due said death beneficiary the sum of $1,000, the same was paid and accepted by her out of said fund, death having been caused by the injuries mentioned in the complaint. With respect to the complaint, counsel for appellant in his able brief says: "It not being questioned that each paragraph is within the meaning of the statute," section 7083 Burns 1894, "and especially so in view of the fact that the complaint, showing as it does, not only that the injury was caused by the negligence of fellow servants, but also that appellant had promulgated

proper rules, it is not deemed necessary further to set forth the substance of the complaint. If the statute is unconstitutional, the complaint is bad." No objection to either paragraph of the complaint is pointed out, except that both are obnoxious to the Constitution.

Appellant propounds the following as the questions presented by this appeal:

"(1) Constitutionality of the Employers' Liability Act of March 4, 1893, and especially the fifth section. (2) Whether contracts of the kind in this case are within the meaning of section five, and if so, whether the section is violative of the obligation of the contract in this case, entered into before the act. (3) Whether acceptance of benefits by the death beneficiary of a deceased employe member of appellant's voluntary relief department, bars an action on death."

The first question propounded has been decided by this court adversely to appellant's contention in the case of *Pittsburgh, etc., R. Co.* v. *Montgomery, ante,* 1. The question had full consideration in that case, and we are content with the conclusion there arrived at.

The first branch of the second proposition, namely, whether contracts of the kind in this case are within the meaning of section five of the act of March 4, 1893, has also recently received consideration by this court in the case of *Pittsburgh, etc., R. Co.* v. *Moore, Adm., ante,* 345. The contract reviewed in the Moore case is identical in terms with the contract pleaded in the second paragraph of answer in this case, and in the former we held that the contract was not one to release, or relieve, the railroad company from future liability, but a contract that, in the event of injury, the injured party would then, after injury, elect between two sources of compensation, and that his election of one would preclude his rights to the other; and hence the contract was one not forbidden by section five of said act, and must be considered, and its validity determined, in the same manner as if the act of 1893 had not been adopted. We adhere to the views ex-

pressed in the Moore case, and it would therefore be a needless waste of effort to consider the constitutional question presented upon the fifth section of said act.

The complaint discloses that the decedent left surviving him the plaintiff, his widow, and one child. The second paragraph of the answer is pleaded in bar of the action, and appellant's learned counsel, in his able and ingenious brief, earnestly insists that the widow's acceptance, as the sole beneficiary named in her deceased husband's application to and contract with the relief department, of the death benefit, released all right and cause of action against appellant for wrongfully causing the death of her husband, his insistence being that death, under the provisions of section 284 Burns 1894, section 283 Horner 1897, does not create a new or independent cause or right of action, but only continues, to his personal representative, the right or cause of action vested in the intestate before his death; that the paramount thing for which damages may be recovered is the same, whether the recovery is by the intestate in his lifetime, or by his personal representative after his death; and "the action, whether for injury or death, being bottomed on the same wrong, it follows that the power to contract in regard to the injury carries with it the right to contract with regard to death as a result of the injury." If we could accept the premise as sound, we could approve the logic. But, if the premise is false, the conclusion fails.

It is conceded that the death statute of Kentucky, pleaded with the complaint, is similar, in effect, to our section 284, *supra,* and appellant confines the discussion to the interpretation that should be placed upon the latter statute. Section 284 reads as follows: "Where the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the

same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

It is beyond controversy that at common law a cause of action arising out of an injury to the person died with the death of either party, and that whatever cause or right of action is now maintainable exists by virtue of the statute. The right is of legislative origin, and in its creation the legislature had the power to provide for whose benefit it should exist, and the terms and conditions upon which it can be maintained. There appears no warrant in the statute for the assertion that it was the legislative intent to keep alive the cause or right of action vested in the intestate. It is true that the right of action provided by the statute must rest upon the same wrongful act or omission, and be tested and established by the same facts and rules of evidence; that is to say, if the facts supported an action in the intestate against the defendant for a wrongful act or omission, and he did not or could not avail himself of it, upon his death therefrom the statute gives an action for the same cause to his representative for the use of his widow and children. *Ohio, etc., R. Co.* v. *Tindall*, 13 Ind. 366, 369; *Louisville, etc., R. Co.* v. *Thompson*, 107 Ind. 442, 444.

But, even if the actions are grounded upon the same wrong, it is more reasonable and logical to hold that the intent of the legislature was to create a new and independent right of action upon the failure of another for the same wrong; that is, in cases where the damage resulting from the wrong is transferred to others. By this enactment, it was the obvious purpose of the legislature to prevent the wrongdoer from escaping the civil consequences of his act in a case where his wrong reaches the degree of causing death.

The statute expressly recognizes that, when death ensues from a wrongful act, the next of kin are the persons damni-

fied, and the action is given to compensate them for the damages sustained thereby. In no sense can the action given by statute be said to be the same as that resting in the intestate before his death, further than that the source is the same. In the former the right comes by the common law; in the latter by statute. In the former the elements of damage that were recoverable were for bodily pain and suffering, loss of time and health, and expenses incurred in providing medical attendance, and nursing; in the latter the damages are confined to pecuniary loss. To the widow is allowed, for example, the amount of damages sustained by her in the loss of such support as she was receiving, and was likely to receive, from her husband, to be measured by his present and prospective earnings, less the sum required for his personal support and other family obligations. To his child is allowed, not only for the loss of his support during infancy, but also for the loss of parental care and training for the duties of active life. *Board, etc.,* v. *Legg, Adm.,* 93 Ind. 523, 529, and cases cited. In the former the recovery inured to the benefit of the injured party; in the latter the recovery is for the exclusive benefit of the widow and child, no part of it going to the intestate's estate.

The fact that the action is lodged in the personal representative of the deceased furnishes no valid ground for argument. As the action inures to the benefit of the widow and children, and, upon their failure, to the next of kin, it may often be found impracticable for all the beneficiaries to join as plaintiffs; and doubtless, as a matter of convenience, the legislature provided a trustee for them in the personal representative of the decedent.

We therefore conclude that section 284 Burns 1894, should be construed as creating a new and independent right of action for the use of the next of kin, its validity to be tested by the right of the intestate to maintain an action for the same wrong, had he lived. This view finds support in the foling authorities: *Burns, Adm.,* v. *Grand Rapids, etc., R.*

*Co.*, 113 Ind. 169, 171; *Hamilton, Adm.,* v. *Jones, Adm.,* 125 Ind. 176; Elliott's Railroads, section 1361; *Pym, Adm.,* v. *Great Northern R. Co.,* 4 Best & S. 396; *Hanna, Adm.,* v. *Jeffersonville R. Co.,* 32 Ind. 113; *Hilliker* v. *Citizens St. R. Co., ante,* 86.

The case of *Hecht* v. *Ohio, etc., R. Co.,* 132 Ind. 507, is urged upon us as declaring a different interpretation of the statute. We cannot accept this case as an authority upon the question we have here. The question before the court in the Hecht case was entirely different, and rested upon entirely different grounds. The intestate, in his lifetime, had successfully prosecuted an action for his injuries, and had received payment of the judgment, and had thereby extinguished his right of action before his death; and the question there considered and decided by the court was that the intestate, having exhausted his right of action by a recovery of all the damages resulting from the wrongful act, could not have maintained another action therefor had he lived, and hence no action accrued, under the statute, for the use of his widow and children. If we construe the language of the court in the light of the question under consideration, we are unable to find anything in support of appellant's contention that the cause or right of action conferred upon the personal representative of the deceased is the same right or cause of action that was vested in the deceased in his lifetime. The court expressly says on page 512 of the Hecht case that "it is true in a certain sense that section 284 Burns 1894, gives a new right of action in favor of the widow and children." It follows, therefore, that whatever may be said with respect to the power of the intestate to contract away his right of action against the appellant, he surely had no power to bargain away his family's right of action given by statute against the one wrongfully causing his death.

The widow, as beneficiary, accepted the death benefit of $1,000, and released appellant from liability. But her release in no way affected the rights of the decedent's child.

She could release only what she was entitled to.    *Pittsburgh, etc., R. Co.* v. *Moore, Adm., ante,* 345.    She sues in her representative capacity, as well for the child as for herself as widow.

The second answer is pleaded in bar of the whole action, and is only sufficient as to a part.    The demurrer thereto was properly sustained.    Appellant's counsel suggests an extraterritorial question, namely, whether the sufficiency of the complaint is to be determined by the laws of this State, or Kentucky, where the accident and death occurred.    But he has not argued the question in his brief and we must, therefore, deem it to be waived.    *Western Union, etc., Co.* v. *Kilpatrick,* 97 Ind. 42, 49; *Fairbanks* v. *Meyers,* 98 Ind. 92; *Kennell* v. *Smith,* 100 Ind. 494; *Daniels* v. *McGinnis, Adm.,* 97 Ind. 549.

Finding no available error in the record, the judgment should be affirmed.    Judgment affirmed.