## Drury, Guardian, et al. v. Krogman.

[No. 9,407. Filed November 1, 1918. Rehearing denied January 31, 1919. Transfer denied June 20, 1919.]

1. Intoxicating Liquors.—*Damages.—Sale of Liquor.—Directing Verdict.—Evidence.*—In an action against a liquor seller for death caused by an intoxicated person, where there was evidence, though wholly circumstantial, which would have warranted the jury in finding that defendant sold the liquor to the person causing the death, as averred in the complaint, the trial court was not justified in directing a verdict for defendant solely on the ground that there was no evidence to support that particular averment. p. 612.

2. Death.—*Wrongful Death.—Right of Action for Damages.*—The right to maintain an action for damages for wrongfully causing the death of a human being is purely statutory. p. 612.

3. Death.—*Action for Wrongful Death.—Who May Sue.—Statute.*—Under §285 Burns 1914, Acts 1899 p. 405, relating to the recovery of damages for wrongful death, the administrator is the only person who can maintain such an action. p. 612.

4. Intoxicating Liquors.—*Illegal Sales.—Injury to Means of Support.—Death of Mother.—Right of Children to Recover Damages.—Statutes.*—Even though §20 of the act of March 17, 1875, §5323 R. S. 1881, which was §8355 Burns 1908, giving any person injured in his means of support on account of the use of intoxicating liquor illegally sold a right of action against the seller, was not repealed by the act of March 4, 1911 (Acts 1911 p. 244, §8323d et seq. Burns 1914), children surviving a mother who was shot and killed by an intoxicated person could not recover from the one who sold the liquor, in an action based on the theory that they had been damaged in their means of support, where they and the mother lived with the father as members of a common family, since it was the father's duty, and not that of the mother, to support the children, and he was entitled to the services of the wife. p. 613.

From Crawford Circuit Court; *Thomas B. Buskirk,* Judge.

Action by Charles R. Drury, as guardian of his five minor children, against William Krogman, wherein such children were substituted as parties plaintiff.

From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*Robert W. Armstrong, Charles Brown* and *Samuel A. Lambdin,* for appellants.

*Norman E. Patrick* and *John W. Ewing,* for appellee.

This action was instituted by Charles R. Drury in his capacity as guardian for his five minor children, against William Krogman, to recover damages for the death of his wife, who was the mother of said children. He filed his complaint September 4, 1911, in the circuit court of Perry county and on his motion the cause was venued to the circuit court of Harrison county. In the latter court the children filed their petition to be substituted as parties plaintiff and to be permitted to prosecute their cause of action as infant poor persons. Their petition was granted and the substitution was made on the order of the court. The children then filed their complaint, denominated "amended complaint." Demurrer to the "amended complaint" for want of facts was overruled. Answer in four paragraphs. On defendant's motion the cause was venued to the Crawford Circuit Court. Verdict for the plaintiffs in the sum of $2,500. This verdict was set aside by the granting of a new trial. A change of venue was then taken from the regular judge and a special judge was appointed. A second trial resulted in a verdict for plaintiffs in the sum of $7,000. The second verdict was set aside by the granting of a new trial. On the third trial, when plaintiffs' evidence in chief had been introduced, the court gave the jury a peremptory instruction to return a verdict for the defendant. Motion for new trial overruled. Judgment accordingly.

So much of the amended complaint as is necessary to an understanding of the question presented by this appeal is as follows: "That the defendant, at the time of the injuries hereinafter complained of, was a licensed vendor of intoxicating liquors in Tell City, Indiana; that as such licensed vendor of intoxicating liquors, on January 7, 1911, the defendant unlawfully sold, bartered, gave and delivered intoxicating liquor to one Joseph Weigand who was then and there in a state of intoxication and was wild, mad, insane, crazy and drunk, and was then and there known to be in that condition by the defendant; that the defendant not only sold, gave, bartered and delivered intoxicating liquor, as aforesaid and under the conditions as aforesaid, but he caused the same to be sold, bartered, given and delivered to said Weigand at said time in less quantity than a quart at a time, while said Weigand was then and there in a state of intoxication, crazy, insane, drunk, wild and mad, and known to be in said condition by defendant and his agents and servants at the time of said sale; that said intoxicating liquor was taken and accepted by said Weigand and then and there drunk by him; that said intoxicating liquor caused said Weigand to become more intoxicated; that while in this intoxicated condition and by reason thereof, said Weigand unlawfully and wrongfully and without right, shot with a pistol loaded with powder and leaden ball one Rachel C. Drury, mother of plaintiffs herein, thereby causing her death, all without fault or negligence on her part. That the death of said Rachel C. Drury was caused solely by reason of the unlawful sales, gifts, barters and deliveries of intoxicating liquor by the defendant and his agents and servants to said Wiegand while the

said Weigand was in a state of intoxication and known to be in said condition by the defendant, his agents and servants. That said Rachel C. Drury, at the time of her death, was thirty years of age with a life expectancy of thirty-five years; that she was a strong, able-bodied, healthy and industrious woman, and was well worth to her said children, by way of nurture, care, training, education and support, the sum of $25.00 per week; that said Rachel C. Drury left surviving, as her heirs at law and next of kin, her five children, the plaintiffs herein; that the names and ages of said children are as follows : Myrtle, 13 years; Legatha, 11 years; Morris, 9 years; Charles, 7 years; and William, 3 years. That at the time of her death their said mother was contributing to the care, nurture, support, and training and education of the plaintiffs herein; that by reason of the above and foregoing grievances the plaintiffs say that a cause of action has accrued to them against the defendant and that the plaintiffs have been damaged by reason of said grievances, in their person, property and in their means of support, in the sum of $10,000.00.''

On motion of the defendant the words ''wild,'' ''mad,'' ''insane'' and ''crazy'' were stricken from the complaint. Likewise the words ''person'' and ''property'' were stricken, leaving the concluding averment to be read as follows: ''Said wards have been damaged in their means of support in the sum of ten thousand dollars.''

Appellants have assigned as error the overruling of the motion for a new trial, which motion rested on the action of the trial court in directing the verdict, and appellee has assigned as cross-error the ruling on the demurrer.

DAUSMAN, J.—The evidence shows that Joseph Weigand was an old reprobate and habitual drunkard. His depravity was known generally in the community where he lived at the time of the commission of the crime described in the complaint, and had been so known for a long time prior thereto. Charles R. Drury was Weigand's next-door neighbor. The Drury family consisted of himself, his wife, and their five children. At the time of her death the husband, wife, and children were living together, as a family, and the wife and children were being supported by him. Throughout the night before the commission of the crime Weigand was intoxicated and had disturbed the neighborhood by his drunken ravings. During the forenoon of January 7, 1911, he continued in a state of intoxication. In the immediate neighborhood of the Drury home, across the street therefrom and in view thereof, was a distillery and salesroom of which William Krogman was proprietor. Krogman was well acquainted with Weigand, and for a long time had supplied him with liquor. About noon of said day Weigand went into the salesroom with an empty quart bottle. Soon afterward he came from the direction of the salesroom, making his way homeward, with a quart bottle full of whisky. Between 2 and 3 o'clock p. m. of that day he emerged from his house with a rifle, and, without any provocation whatever, he shot Mrs. Drury, who was working in the yard of the Drury home, inflicting a wound from which she died eight days thereafter. At the time of the shooting Weigand was in a crazed condition superinduced by the excessive use of whisky. Krogman was not licensed under the laws of Indiana to sell, barter, or give away intoxicating liquor.

Did the trial court err in directing the verdict? The evidence as to where, how and from whom Weigand procured his whisky about two hours before the commission of the deplorable crime is wholly circumstantial. However, we are of the opinion that the evidence would have justified the jury in finding that he procured the whisky as averred in the complaint. The trial court, therefore, was not justified in directing the verdict solely on the ground that there is no evidence to support that particular averment. But it would be folly to permit this litigation to proceed, for any judgment which appellants might recover would have to be set aside ultimately for other reasons.

2. The right to maintain an action for damages for wrongfully causing the death of a human being did not exist at common law. That right as it now exists is purely statutory. *Indianapolis, etc., R. Co.* v. *Keeley's Admr.* (1864), 23 Ind. 133; *Jackson* v. *Pittsburgh, etc., R. Co.* (1895), 140 Ind. 241, 39 N. E. 663, 49 Am. St. 192; *Pittsburgh, etc., R. Co.* v. *Hosea* (1899), 152 Ind. 412, 53 N. E. 419.

3. The general statute on this subject is §285 Burns 1914, Acts 1899 p. 405, but under this section the administrator is the only person who can maintain the action. *Yelton, Admr.,* v. *Evansville, etc., R. Co.* (1893), 134 Ind. 414, 33 N. E. 629, 21 L. R. A. 158; *Pittsburgh, etc., R. Co.* v. *Moore* (1899), 152 Ind. 345, 53 N. E. 290, 44 L. R. A. 638; *Pittsburgh, etc., R. Co.* v. *Hosea, supra; Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, 67 N. E. 923; *Couchman* v. *Prather* (1904), 162 Ind. 250, 70 N. E. 240; *Elliott* v. *Brazil Block Coal Co.* (1900), 25 Ind. App. 592, 58 N. E. 736; *Fabel* v. *Cleveland, etc.,*

*R. Co.* (1903), 30 Ind. App. 268, 65 N. E. 929; *Baltimore, etc., R. Co.* v. *Gillard* (1904), 34 Ind. App. 339, 71 N. E. 58; *Smith, Admx.,* v. *Cleveland, etc., R. Co.* (1918), 67 Ind. App. 397, 117 N. E. 534.

It is apparent from the complaint that counsel for appellants were of the opinion that the children derived a right to maintain this action from §8355 4. Burns 1908, §5323 R. S. 1881, which has been omitted from Burns' Revision of 1914. This is §20 of the former license law—the act of March 17, 1875—and is in the following language: "Section 20. Every person who shall sell, barter, or give away any intoxicating liquors, in violation of any of the provisions of this act, shall be personally liable, and also liable on his bond filed in the Auditor's office, as required by section four of this act (§5315), to any person who shall sustain any injury or damage to his person or property or means of support on account of the use of such intoxicating liquors, so sold as aforesaid, to be enforced by appropriate action in any court of competent jurisdiction." §5323 R. S. 1881.

Appellee earnestly insists that said §20 was repealed by the act of March 4, 1911, entitled "An Act Concerning Intoxicating Liquors." Acts 1911 p. 244, ch. 119, §8323d *et seq.* Burns 1914. In support of that contention appellee cites *McHale* v. *Board, etc.* (1913), 180 Ind. 390, 103 N. E. 321. But in view of the conclusion we have reached on the other features of the case we need not discuss that question.

It has been held that any person who has been damaged by the violation of any of the provisions of the act referred to in said §20 should bring his action directly and in his own name, and not indirectly through the medium of an administrator, and also

that, where the action is on the bond, it is properly brought in the name of the State of Indiana on the relation of the person who has been so damaged. *Wall* v. *State, ex rel.* (1894), 10 Ind. App. 530, 38 N. E. 190.

In conferring a right of action on persons injured or damaged in their "means of support," what was the real legislative intent? To discover that intent we must look to the principles of the common law and to the statutes of this state, if any, bearing upon the subject. At common law the husband is the head of the family. He has the right to the custody and control of the children, except in cases of misconduct or where the welfare of the child demands that such custody be taken from him and given to the mother; and generally his authority and dominion over the children is exclusive as between him and the mother. The duty to support his wife and children is imposed by the common law on the husband. As between father and mother, the primary liability for the support of the children is imposed on the father. In this state statutes have been enacted making it a criminal offense for a husband, without good cause, to abandon and fail to support his wife or child. §2635 Burns 1914, Acts 1913 p. 956. At common law the husband is entitled to the services of the wife and consequently to her earnings. Even under modern statutes enlarging the rights of married women, it is held to be the duty of the wife, without compensation, to attend to all the ordinary household duties and to labor faithfully in these matters to advance her husband's interests. 13 R. C. L. 983 *et seq.;* 29 Cyc 1606; *Liebold* v. *Liebold* (1902), 158 Ind. 60, 62 N. E. 627; *Nelson* v. *Spaulding* (1894), 11 Ind. App. 453, 39 N. E. 168; *Hensley* v. *Tuttle* (1897), 17 Ind. App. 253, 46 N. E.

594; *Scott* v. *Carothers* (1897), 17 Ind. App. 673, 47 N. E. 389; *Robinson* v. *Foust* (1903), 31 Ind. App. 384, 68 N. E. 182, 99 Am. St. 269.

Charles R. Drury, his wife, and their children, lived together as members of a common family up to the time of the death of the wife, and at said time he was fulfilling all the legal obligations resting upon him as the head of the household. Therefore the status of the Drury family was that of the common law. In the legal sense the services rendered by the wife, including all the services in the way of care bestowed upon the children, inured to the benefit of the husband. Had he brought an action in his own right against Weigand—or, if maintainable, against Krogman—the measure of his damages would have included the identical elements for which the children are seeking to recover in the case at bar. *Indianapolis, etc., Transit Co.* v. *Reeder* (1908), 42 Ind. App. 520, 85 N. E. 1042. In contemplation of law appellants are wholly dependent on their father, and in no lawful sense can they be regarded as dependents of their deceased mother. The duty of the father to support his minor children is a continuing one, and, on the death of the mother, the obligation rested upon him to provide in some other manner for the children such services in the way of care and attention as the mother rendered in her lifetime. It follows that under the facts in this case appellants were not injured or damaged in their means of support within the meaning of the statute under consideration. The rule that no one other than the person or persons designated in the statute can maintain an action for the death of a human being by wrongful act is rigidly enforced. 8 R. C. L. 761 *et seq.* Therefore we must and do hold

that appellants cannot maintain this action under §20, *supra.*

Whether this section ever was applicable to any person other than a saloonkeeper licensed under the act of March 17, 1875, *supra,* or under said act as from time to time amended, we need not decide.

No statute authorizing appellants to maintain this action has been pointed out to us, and we know of none. The trial court did not err in overruling the motion for a new trial. The conclusion we have reached makes it unnecessary to consider the ruling on the demurrer to the complaint.

Judgment affirmed.