FORREY, JR., RECEIVER *v.* TURPIN, EXRX.

[No. 16,028. Filed April 11, 1939. Rehearing denied June 13, 1939. Transfer denied October 3, 1939.]

682

*Homer Elliott, Pickens, Gause, Gilliom & Pickens,* and *B. E. Sattler,* for appellant.

*Charles F. Remy, William H. Remy,* and *Frank T. Sisson,* for appellee.

CURTIS, C. J.—This was an action by Georgia Turpin, who is executrix of the last will of W. Smith Turpin, her deceased husband, against George C. Forrey, Jr., as receiver of Indianapolis Street Railway Company, for damages occasioned by the alleged wrongful death of her said decedent. She brings the action in her capacity as the personal representative of her deceased husband and in her behalf as the widow of said decedent.

The decedent was foreman of the Senate Avenue plant of the Indianapolis Glove Company and was killed by an electric shock while on the roof of the factory building trying to construct an aerial for his radio. Senate Avenue is a public street running north and south in the city of Indianapolis, and the building on which the decedent stood is on the east side of the street and faces west. There was an open alley along the north side of the building. The decedent met his death by throwing his aerial wire up and out over a high voltage electric wire on

Senate Avenue, which high voltage wire was slightly more than six feet west of. the west wall of the building and about six feet higher than the roof on which he stood. There was a clear space of something over six feet between the high voltage wire and the front wall of the building.

There was a fire wall, or parapet, along the front, or west side of the building, which some of the testimony showed to be 39 inches high, measuring from the roof. A transmission line ran on and along the street in front of. the building, the poles being set next to. the east curb at the street pavement. There was a sidewalk between the east curb and the front of the building. The poles carried cross arms, and there were six high tension wires attached to three cross arms, thus placing three wires on each side of the pole. One of these wires belonged to the appellant. This wire carried 33,000 volts of electricity. The three wires on the side next to the building were six and one-half feet distant from the perpendicular front wall of the building; the others were on the opposite ends of the cross arms and were substantially farther away. The topmost pair of these wires was about three feet, or slightly less, higher up than the top of the parapet wall, or on a plane about six feet higher than the roof. These wires were in plain view from the roof of the building.

At the time of his injury, Mr. Turpin was attempting to install a radio in his office on the first floor of the building, and had gone to the roof for the purpose of constructing an aerial. He took some wire which he attached to the main aerial on the roof and then intended to let it down alongside the front of the building so as to make the connection with the radio in a front room in the building. Along the foot of the parapet was a metal flashing, constructed to prevent water from seep-

ing down the wall, and Mr. Turpin stood with one foot on this flashing. With the apparent intention of casting the small wire over the parapet wall so that it would drop down along the front of the building, he tossed it out in such a manner as that it came in contact with the appellant's wire, which was the topmost high tension wire.

The instant the circuit was established, Mr. Turpin was killed. The wire he had thrown was burned in two, the current passed through the foot resting on the metal flashing, burning a hole in the sole of his shoe.

The high tension wire was not enclosed by any insulating material, nor were the cross arms supporting it painted in any distinguishing color.

The appellee contends in the first two paragraphs of complaint that the maintenance of the uninsulated high tension wire within said distance of the building constituted negligence and was the proximate cause of decedent's death; and in the third paragraph of complaint it is contended that failure to insulate the wire and the failure to paint the cross arms with a distinguishing color was negligence and caused the death.

The appellant claims freedom from negligence on its part, and that the decedent's death was caused by his own contributory negligence.

The jury found for the appellee and awarded her damages in the sum of $5,000. The judgment was in accordance with the verdict of the jury. This appeal involves the sufficiency of the several paragraphs of the complaint; the sufficiency of the evidence to sustain the verdict; whether the verdict is contrary to law; also whether there was error in giving of each of certain instructions and in refusing to give each of certain instructions tendered by the appellant.

The cause was submitted for trial on the second

amended complaint in three paragraphs which appellant, after demurrers to each were overruled, answered by general denial. The appellant's demurrers to each paragraph of the complaint were for want of sufficient facts, also for want of appellee's capacity to sue in her capacity as executrix.

Each of the paragraphs pleads the physical surroundings in that each alleges that the Indianapolis Street Railway Company, as a part of its system, maintained an uninsulated open wire or cable for the transmission of electric current, which wire was supported by a line of poles set a short distance east of the east curbline of North Senate Avenue, in the city of Indianapolis; that the wire carried a current of more than 15,000 volts. The Indianapolis Glove Company's factory was located at 1315 N. Senate Avenue; it was a three story brick building with a frontage of about 65 feet on Senate Avenue, and extended back, toward the east, about 100 feet.

The first and second paragraphs charge negligence in the maintenance, on July 1, 1931, of said open, overhead wire along and over the east side of North Senate Avenue at a distance horizontally from the building of approximately six feet, "well knowing that said wire carried and was the conductor of a dangerous and deadly current of electricity of much more than 15,000 volts between conductors, and well knowing the fact that the maintenance of said wire carrying the said high voltage of electricity at a distance of but six feet horizontally from said building was exceedingly dangerous to the occupants and employees in or about said building, and to all persons who had occasion or reason to go upon the roof of said building, and well knowing that persons who had occasion to be upon the roof of said building, and approach the west wall thereof were placed in dangerous proximity to said wire . . . which defendant at the time knew was

wholly without insulation, guard or protection of any kind."

The said first and second paragraphs each alleges that on July 1, 1931, appellee's decedent, W. Smith Turpin, an employee of the Indianapolis Glove Company, went upon the roof of the building for the purpose of installing a radio aerial, and that he carried with him a roll of wire of sufficient length to connect the aerial on top of the building with the radio on the first floor; that he, "in a careful and prudent manner, with the wires in his hand, proceeded upon the roof to the west wall of the building, and, preparatory to attaching the wire to the radio, and in the exercise of reasonable and ordinary care, cast the unattached end of the wire over the wall, holding the wire in his hand as he did so; that when the wire was cast over the wall, and solely because of the negligent maintenance by the defendant of its said uninsulated wire or cable too close to the said building, the unattached end of the wire cast over the wall came in contact with the defendant's uninsulated wire" and the current was carried to the decedent, resulting in his instant death.

It will be noted that the first and second paragraphs are legally identical.

The third paragraph varies from the others in this: it is alleged that the appellant maintained its high voltage wire, carrying approximately 33,000 volts at a point where the public was liable to come in contact with it, without insulation, guard or protection of any kind; "that the arms or supports bearing said wire were not especially designed or distinguished by a color or other designation, which was instantly apparent, as required by law." That the reasonable efficiency of the wire and supporting structure did not require that it should be strung so near to the building.

Other allegations of the third paragraph are substan-

tially the same as in the first and second paragraphs.

The appellant's demurrer to each paragraph of the second amended complaint was overruled with exceptions reserved. After the rulings on the demurrers the appellant filed a motion to strike out certain parts of the said second amended complaint, which was sustained in part and overruled in part. No alleged error is presented in this court as to the ruling on the said motion to strike. After the rulings on the demurrers and the motion to strike there was, as previously pointed out, an answer in general denial to each paragraph of the second amended complaint. The result of the trial which followed has been heretofore stated.

In due time the appellant filed a motion for a new trial on the grounds as previously indicated that the verdict of the jury was contrary to law, was not sustained by sufficient evidence, that the damages assessed were excessive, and for alleged error in giving and refusing to give each of certain instructions. The motion was overruled and this appeal followed.

The errors assigned in this court are the rulings on the demurrers to each paragraph of the second amended complaint and the ruling on the motion for a new trial, which was based upon the causes or grounds heretofore mentioned.

One of the specifications of the demurrers is that the appellee in her capacity as executrix under the last will of her deceased husband did not have the capacity to bring this action on behalf of herself as the widow of the decedent. There is no merit in this contention. Section 2-404 Burns 1933, §51 Baldwin's 1934, provides, among other things, that "When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if

the former might have maintained an action had he or she (as the case may be) lived, against the latter for an injury for the same act or omission . . ." The words personal representative as used in the above statute include a duly qualified general administrator or executor. They may also be appointed for the specific purpose of prosecuting such an action. The damages recovered inure to the benefit of those named in said statute, including a widow. See: *Toledo, St. Louis and Kansas City Railroad Company* v. *Reeves* (1894), 8 Ind. App. 667, 35 N. E. 199; *Dury, Gdn.* v. *Krogman* (1919), 70 Ind. App. 607, 120 N. E. 620; *Lake Erie & Western Railroad Company, et al.* v. *Charman, Administrator* (1903), 161 Ind. 95, 67 N. E. 923.

With further reference to the demurrers addressed to each of the first and second paragraphs of the second amended complaint on the ground of insufficient facts, it is to be noted that each of said paragraphs, among other things, alleges that the appellant negligently maintained an unguarded, open, overhead wire along and over the east side of the said street at a distance horizontally from the said building in question of approximately six feet with the knowledge that the wire was not insulated and carried a dangerous current of electricity of more than 15,000 volts and with the knowledge that it was dangerous to the occupants of the said building and to persons who had occasion to be upon the roof of the building and that persons who had occasion to go upon the roof and approach the west wall of the building were placed in dangerous proximity to the uninsulated wire; that the appellee's decedent went upon the roof to install a radio aerial which he was planning to attach by wire to a radio in the office on the main floor, and that in a careful and prudent manner, with the aerial wire in his hand, he proceeded on the roof to the west

wall, and in the exercise of reasonable and ordinary care, cast the unattached end of the aerial wire over the wall and that when the wire was cast over the said wall "and solely because of the negligent maintenance by the defendant (appellant) of the uninsulated wire too close to the building," the wire cast over the wall came into contact with the said uninsulated high tension wire. In our opinion, the facts thus alleged in said two paragraphs were sufficient to withstand the demurrer addressed thereto, and sufficiently presented the issue as to whether the uninsulated wire was negligently maintained by the appellant too close to the wall of said building and whether or not the decedent was guilty of contributory negligence. Clearly under the authorities and the said allegations, all of such questions were questions of fact for the determination of the jury under the evidence.

Section 20-304 Burns 1933, §10090 Baldwin's 1934, insofar as it applies in this case is as follows:

"It is hereby made the duty of all owners, contractors, sub-contractors, corporations, agents or persons whatsoever engaged in . . . the transmission, generation or use of any electricity or other power . . . to see and to require that all . . . wires . . . all contrivances, and everything whatsoever used therein, are carefully selected, inspected and tested, so as to detect and exclude defects and dangerous conditions, and that all . . . contrivances used are amply, adequately and properly constructed . . . and that they are properly and safely used, operated, handled and maintained . . . and that in the transmission and use of electricity of a dangerous voltage, full and complete insulation shall be provided at all points where the public . . . are liable to come in contact with the wire or wires . . . and the arms or supports bearing live wires are especially designated and distinguished by a color or other designation which is instantly apparent, and that live electrical res carrying a dangerous voltage are strung at

such distance from the poles or supports as to permit repair men to freely engage in their work without danger of shock; and generally, it shall be the duty of all owners, managers, operators, contractors, subcontractors, and all other persons having charge of, or responsible for, any work, mechanism, machinery, appliance, building, factory, plant, means, employment or business of whatsoever nature, involving risk or danger to employees, or to the public, to use every device, care and precaution which it is practicable and possible to use for the protection and safety of life, limb, and health, limited only by the necessity for preserving the reasonable efficiency of such structure, ways, work, plant, building, factory, elevator, cars, engines, machinery appliances, apparatus or other devices or materials, without regard to additional cost of suitable materials or safety appliances, or safe conditions or operations, the first concern being safety to life, limb and health."

The demurrer addressed to the third paragraph of the second amended complaint, in addition to the matters heretofore mentioned, proceeded upon the additional theory that the statute (Sec. 20-304 Burns, §10090 Baldwin's *supra*) requiring that arms and supports bearing live wires be especially designated and distinguished by color or other designation which is "instantly apparent" is not for the protection of the public but is for the sole protection of workmen on the line. We do not concur in this contention. We have not been able to find anything in said statute so limiting it and we do not believe it should be so construed. The demurrers to each of said paragraphs of the second amended complaint were correctly overruled. The appellee, with much merit, has argued a practice question in connection with the demurrers and the motion to strike out parts of the second amended complaint, but since we have concluded that each paragraph of said complaint states a good cause of action, we need not discuss said practice question.

We have read the evidence carefully and, in our opin-

ion, it abundantly sustains the verdict of the jury. In addition to the evidence heretofore pointed out, there was evidence tending strongly to prove that the National Electric Safety Code and other safety codes suggest that where wires are used carrying the high voltage shown to have been carried by the appellant's wire in question that the said wires be placed at least 10 feet from a building which is used by the public. There was evidence that all voltage above 110 is dangerous and that 2300 volts will kill. Some of the evidence showed that insulating a wire tended to protect the public and that it was standard practice to insulate wires carrying up to 2300 volts and over. From the evidence before the jury, it is our opinion that the jury was warranted in concluding that the appellant was guilty of the negligence charged and that the decedent was free from contributory negligence.

We have examined carefully the instructions given and those refused of which complaint is made, together with all of the instructions given and upon the whole it is our conclusion that the jury was fully and fairly instructed and that there was no reversible error as to instructions. In view of what has heretofore been stated herein, we do not deem it necessary to discuss each separate instruction. There was, of course, no error in giving instructions based upon an untenable theory of the appellant's negligence, nor in refusing to give other instructions fully covered by others given.

Finding no reversible error, the judgment is affirmed.